**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edward M. NASH, Defendant–Appellant.**

**No. 97–1601.**

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 25, 1999.

Decided April 28, 1999.

---

George C. Bush (briefed), Thick & Bush, Saginaw, Michigan, for Defendant–Appellant. James A. Brunson, Assistant U.S. Attorney (briefed), Bay City, Michigan, for Plaintiff–Appellee.

Before: RYAN and GILMAN, Circuit Judges; SARGUS, District Judge.*

GILMAN, Circuit Judge.

Edward M. Nash was convicted for the willful failure to file income tax returns for 1991 and 1992, and for the presentation of false, fictitious, or fraudulent tax-refund claims for 1989–1991. He appeals, claiming that (1) the evidence was insufficient to support his conviction for the presentation of false, fictitious, or fraudulent claims for tax refunds, (2) the district court improperly denied the submission of certain exhibits to the jury, (3) the district court improperly instructed the jury, and (4) the district court erred in its application of sentence enhancements for obstruction of justice and for causing a tax loss of greater than $120,000. For the reasons set forth below, we **AFFIRM** Nash's conviction and sentence enhancements.

## I. BACKGROUND

Prior to 1994, Nash was a chiropractor in Skidway Lake, Michigan. After attending various lectures and studying the tax laws, Nash claims to have concluded in good faith that he was not within the jurisdiction of the federal government and that the income tax laws did not apply to him. Specifically he testified that because he was a citizen of the "Republic of Michigan," but not a general citizen of the United States, he was properly classified as a nonresident alien. Given his purported nonresident alien status, Nash concluded that he was not obligated to pay federal income taxes, and that he was owed a refund of the monies that he had mistakenly paid in the past.

In 1996, a grand jury returned a five-count indictment against Nash. Counts 1 and 2 charged Nash with the willful failure to file income tax returns for 1991 and 1992, a violation of 26 U.S.C. § 7203. Nash conceded that he did not file these returns. Counts 3, 4, and 5 charged Nash with the presentation of false, fictitious, or fraudulent claims for tax refunds, a violation of 18 U.S.C. § 287 (Supp.1998). These claims were filed in 1993, seeking refunds for taxes paid during 1989–1991.

At trial, the government presented the testimony of Gregory Holdeman, an analyst in the criminal investigation division of the Internal Revenue Service ("IRS"). Holdeman stated that in 1993 his office received Nonresident Alien Income Tax Returns filed by Nash for the years 1989–1991. Nash signed each form "with all rights reserved, without prejudice," and relabeled each as a "Revocation of Election/Claim for Refund." Holdeman testified that these returns did not constitute processable claims for refunds for three reasons: (1) the only address provided by Nash was "Michigan Republic, America," (2) the absence of Nash's taxpayer identification number, and (3) the inclusion of Nash's reservation of rights statement. The returns were forwarded to revenue

agent Annette Teneyuque for additional processing.

Teneyuque worked as an auditor in the civil division of the IRS. According to her testimony, any form requesting a tax refund, no matter how informal, "has to be considered as a claim." Teneyuque also testified that Nash did not file returns for 1991 and 1992. She thus wrote two letters to Nash, one relating to his non-filing of returns, and the other relating to his refund claims. The latter correspondence, which was sent on November 10, 1993, sought to arrange a meeting between Teneyuque and Nash on November 24, 1993 to further discuss these matters. Nash failed to appear at this meeting. Teneyuque then served a summons on Nash's CPA, Bernard Bak, for his records regarding Nash. After reviewing the information supplied by Bak, Teneyuque referred the case for criminal investigation.

Following the government's case in chief, Nash moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. He argued that Counts 3, 4, and 5 should not be submitted to the jury because the proof, when viewed in the light most favorable to the government, would not allow a rational trier of fact to find that the essential element of materiality had been established beyond a reasonable doubt. Specifically, he argued that the refund claims were immaterial because they would not have been taken seriously by the IRS, and were thus incapable of influencing its decisions. The district court denied the motion.

In his defense, Nash introduced various letters that he wrote to the IRS during 1992 and 1993, stating that he had studied the law and believed that he was not within the jurisdiction of the federal government. One such letter was received by Teneyuque on November 23, 1993. Nash concluded the letter by stating: "With all of the information and court cases that have already decided this issue in my favor, I am curious to find out why you still insist that I am a 'person made liable' in

... the IRS Code. May I please receive a logical explanation?" Teneyuque declined to respond to this letter.

Nash also sought to introduce eight exhibits that he argued supported his good faith defense. These exhibits were marked Exhibits 501 through 508. The district court admitted four of the exhibits into evidence (Exhibits 501, 504, 505, and 506), but did not allow the submission of the remaining four (Exhibits 502, 503, 507, and 508) on the ground that their probative value was substantially outweighed by the danger of confusion under Rule 403 of the Federal Rules of Evidence. Nash, however, was permitted to briefly mention and quote from the four excluded documents during his testimony in order to show the basis for his good faith belief that the income tax laws did not apply to him.

At the end of Nash's defense, the district court charged the jury that good faith, although a defense to Counts 1 and 2, is not a defense to the presentation of false, fictitious, or fraudulent claims for tax refunds as charged in Counts 3, 4, and 5. The jurors were instructed to ignore any evidence regarding good faith in deciding Nash's guilt or innocence on these counts. Nash objected to this jury instruction, but was overruled. Ultimately, the jury returned guilty verdicts on all counts.

At sentencing, the government argued that Nash committed perjury when he testified that his failure to file income tax returns for 1991 and 1992 resulted from a good faith belief that he was not subject to the income tax laws. It sought a two-level increase in Nash's base offense level for obstruction of justice pursuant to § 3C1.1 of the United States Sentencing Guidelines ("USSG"). The district court found that Nash had committed perjury, citing specific portions of the evidence to support this enhancement. Nash's sentence was therefore increased two levels for obstruction of justice.

The government also sought an additional two-level enhancement pursuant to

USSG § 2T4.1(J) for a tax loss greater than $120,000. A tax loss of this amount requires an offense level of 15. Three experts testified at trial as to Nash's tax liability for 1991 and 1992. Teneyuque also computed Nash's liability for 1993. Given these figures, the government determined that Nash's total tax liability was $127,643. In response, Nash argued that the calculations of his tax liability for 1991 and 1992 as provided by the two government witnesses varied by 25–40%, and that Nash's 1993 tax liability therefore should have been discounted by comparable percentages. This would have placed Nash's liability in the $70,000–$120,000 range (Offense Level 14). The district court rejected this argument, adopted the government's calculation of Nash's tax liability at $127,643, and enhanced Nash's sentence accordingly. This appeal followed.

## II. ANALYSIS

### A. Motion for judgment of acquittal

■ We review a district court's denial of a motion for judgment of acquittal under a *de novo* standard of review. *See United States v. Canan*, 48 F.3d 954, 962 (6th Cir.1995) ("Although we review the district court's denial of the motion *de novo*, we must affirm its decision if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt.").

Counts 3, 4, and 5 charged Nash with the presentation of false, fictitious, or fraudulent claims for tax refunds under 18 U.S.C. § 287. According to the government, Nash's claims violated § 287 because Nash knew that he owed taxes, knew that he was within the jurisdiction of the federal government, and knew that he was not owed these refunds. The government contends that Nash's refund claims in light of this knowledge were false, fictitious, or fraudulent.

■ On appeal, Nash argues that materiality is an element of this offense, and

that the government failed to prove that his statements contained in the refund claims were material. He relies on the definition of materiality as set forth in *United States v. Gaudin*, 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), where the Supreme Court described a material statement as one that "must have a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." (internal quotation marks and citation omitted) (brackets in original). According to Nash, his claims for refunds, which bore the obvious earmarks of a tax protestor and were not processable, were immaterial because they would not have misled the IRS, and were thus incapable of influencing its decisions. Because the government failed to prove this element, he argues that a rational trier of fact could not find him guilty beyond a reasonable doubt of these charges.

Whether materiality is an element of 18 U.S.C. § 287 is an issue of first impression in this circuit. Four other circuits have held that materiality is not an element of § 287. *See United States v. Upton*, 91 F.3d 677, 685 (5th Cir.1996); *United States v. Taylor*, 66 F.3d 254, 255 (9th Cir.1995); *United States v. Parsons*, 967 F.2d 452, 455 (10th Cir.1992); *United States v. Elkin*, 731 F.2d 1005, 1009 (2d Cir.1984), *overruled on other grounds by United States v. Ali*, 68 F.3d 1468, 1474–75 (2d Cir.1995). On the other hand, two circuits have held that it is. *See United States v. Wells*, 63 F.3d 745, 750 (8th Cir.1995), *vacated on other grounds*, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997); *United States v. Snider*, 502 F.2d 645, 652 n. 12 (4th Cir.1974).

First, in determining whether materiality is an element of § 287, we look to the plain language of the statute. Section 287 provides as follows:

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any

**434**

claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

As can be seen, the plain language of the statute neither mentions "materiality" nor in any way implies that the claim must be material. "When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991). The Supreme Court has recently held that materiality is not an element of another statute criminalizing false statements, 18 U.S.C. § 1014, based upon the statute's omission of the term "material." *See Wells*, 519 U.S. at 490, 117 S.Ct. 921.

Second, Congress expressly included "materiality" as a requirement in many of the statutes criminalizing false statements. *See, e.g.,* 18 U.S.C. § 1001. The Supreme Court has said that we are to assume that Congress intended each of its terms to have meaning and should hesitate to treat statutory terms as surplusage. *See Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Reading materiality into a statute such as § 287 where the term does not exist would therefore make surplusage of Congress's use of the term in other statutes, such as § 1001. *See Wells,* 519 U.S. at 493 n. 14, 117 S.Ct. 921 (stating that a reading of materiality into those statutes that do not explicitly include this term as an element would be "contrary to our presumption that each term in a criminal statute carries meaning.").

Third, the legislative history of § 287 does not indicate that Congress intended to make materiality a necessary element of the statute. *See United States v. Irwin,* 654 F.2d 671, 682 (10th Cir.1981), *overruled on other grounds by United States v.*

*Daily,* 921 F.2d 994, 1004 n. 11 (10th Cir. 1990).

Finally, a requirement of materiality would set up an incongruous "heads I win, tails you lose" dichotomy. Nash is in effect arguing that his inartful attempt to defraud the government would not have fooled the IRS, thus making his false claims "immaterial." To permit such a defense would reward the taxpayer with an ill-gotten refund if his scheme worked, yet allow him to claim immateriality if he got caught. The taxpayer cannot have it both ways, and there is no justification in allowing him to do so.

For all of the above reasons, we join the Second, Fifth, Ninth, and Tenth Circuits in holding that materiality is not an element of 18 U.S.C. § 287. We therefore affirm the district court's denial of Nash's motion for judgment of acquittal.

**B. Exclusion of Nash's exhibits**

In his defense, Nash sought to introduce eight exhibits (consisting of various writings regarding citizenship, tax liability, and the methods to achieve non-taxpayer status) that he believed supported his contention that he acted in good faith. The district court allowed the full admission of four of these exhibits into evidence, but rejected the remaining four on the ground that their probative value was substantially outweighed by the danger of confusion under Rule 403 of the Federal Rules of Evidence.

Upon review, "[w]e will not disturb the district court's admission of this evidence and its determinations of relevancy absent a clear abuse of discretion. We also apply an abuse of discretion standard to the district court's decision in balancing the potentially unfair prejudicial impact of evidence against its probative value." *United States v. Thomas,* 74 F.3d 701, 714 (6th Cir.1996) (internal citation omitted).

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Exhibits 501, 504, 505, and 506 were admitted in full. Exhibit 501 was a set of documents ordered by Nash, including a cover sheet which read: "The documents in this package have been used by many people to change their official position from that of a taxpayer to a non-taxpayer." Exhibit 504 was a 1989 letter allegedly from a legislative correspondent regarding the precise provisions of the Internal Revenue Code that render an individual liable for income taxes. Exhibit 505 was a letter sent to Nash in 1992 concerning sample tax forms and information. Finally, Exhibit 506 was Nash's lecture notes regarding the Fourteenth Amendment, citizenship, tax liability, the Constitution, the Internal Revenue Code, and the Code of Federal Regulations.

█ In contrast, Exhibits 502, 503, 507, and 508 were not admitted. Exhibit 502 was the first page of the 1991 "Fresh A.I.R. Report" from the American Institute for the Republic. The district court rejected this exhibit after noting that "[i]t may be that there will be reference made to it, but there is extensive statutory citation within it, and commingled with some kind of narrative short story. . . . I'm concerned about the potential jury confusion inherent in 502." Exhibit 503 was an eight-page letter purportedly prepared by a public accountant, income tax author, and lecturer, containing his conclusions pertaining to the filing of income tax returns. Because the district court determined that this "multi-page legal brief or quasi-legal brief" contained "case law miscitations rather than citations," it did not

receive the document as an exhibit. Exhibit 507, a 27–page response in opposition to the United States's motion for summary judgment in an unrelated tax evasion prosecution, was similarly rejected by the district court on the basis that "there's a high likelihood of finding inconsistencies with what the court has expressed in terms of the law and the kind of law that's supposedly briefed within these protest materials." Exhibit 508, also rejected, was a 48–page lecture outline containing essentially the same information as contained in Exhibit 506. The district court, however, stated that Nash could briefly mention or quote from these documents during his testimony in order to show the basis for his alleged good faith belief that the income tax laws did not apply to him. No objection to this procedure was raised by the government.

The record indicates that the district court did not abuse its discretion in excluding these exhibits pursuant to Rule 403 of the Federal Rules of Evidence. The proffered exhibits held the danger of confusing the jury by introducing purported legal analysis that was at odds with the district court's instructions. In addition, at least one of the excluded exhibits, Exhibit 508, also appears to have been cumulative.

Nash argues that in mounting a defense, he should have been permitted to show the jury all of the relevant written materials upon which he claims to have relied. In support of this argument, Nash cites *United States v. Gaumer*, 972 F.2d 723 (6th Cir.1992). Like Nash, Gaumer was convicted for the willful failure to file income tax returns. At his trial, Gaumer sought to admit various documents on which he claimed to have relied in concluding that he was not required to file income tax returns. The district court refused to admit any of the documents based upon potential prejudice. *See id.* at 724. On appeal, this court reversed the district court, holding as follows:

> Mr. Gaumer should ... have been allowed to present the contents of the

exhibits to the jury to the extent that the material was relevant. This does not mean that the trial court was required to permit the physical introduction of exhibits comprising hundreds of pages. At a minimum, however, defendant Gaumer should have been allowed to read relevant excerpts to the jury. *Id.* at 725.

This court's holding in *Gaumer* is not contrary to the district court's rulings in the present case. *Gaumer* held that, to the extent relevant, a defendant should be allowed to present to the jury the pertinent excerpts from the documents on which he or she relied. In contrast to Gaumer not being permitted to introduce any of his exhibits, four of Nash's proffered exhibits were admitted in full to the jury. Nash was also permitted to briefly mention and quote from the documents that were excluded. The district court's ruling in the present case is therefore entirely consistent with the *Gaumer* decision. We consequently find that the district court's exclusion of the four exhibits was not an abuse of discretion.

## C. Jury instruction that good faith is not a defense to Counts 3, 4, and 5

Over Nash's objection, the district court instructed the jury that good faith, although a defense to Counts 1 and 2, is not a defense to making false tax refund claims as charged in Counts 3, 4, and 5. The jurors were told to ignore any evidence regarding good faith in deciding Nash's guilt or innocence as to these counts. The court then issued the following instructions as to Counts 3, 4, and 5:

> In order to sustain its burden of proof for the crime of making a false, fictitious or fraudulent claim as charged in Counts III, IV and V . . ., the government must prove the following four essential ingredients or elements beyond a reasonable doubt. One: That the defendant made or presented a claim to a department or agency of the United States for money or property. Two: The claim was false,

fictitious or fraudulent. Three: The claim was material. And four: The defendant knew at the time that the claim was false, fictitious or fraudulent.

■ "The standard of review for jury instructions is that they are reviewed as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." *Innes v. Howell Corp.*, 76 F.3d 702, 714 (6th Cir.1996) (internal quotation marks and citation omitted). "The district court may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Id.* (internal quotation marks and citation omitted).

■ Nash claims that he did not file the tax refund claims with the knowledge that they were false, fictitious, or fraudulent. Rather, he submits that he did so based on his good faith belief that he was not within the jurisdiction of the federal government, that he was not obligated to pay income taxes, that he had mistakenly paid taxes in prior years, and that he was therefore due the refunds. He argues that the district court's instructions effectively told the jury to ignore whether Nash knew that the refund claims were false, and that these instructions deprived him of his right to a fair trial.

Nash specifically argues that good faith is a defense to the charge of presenting false, fictitious, or fraudulent claims. He cites *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), in support of this argument. In *Cheek*, the defendant was convicted of attempting to evade income taxes and of failing to file income tax returns, in violation of 26 U.S.C. §§ 7201 and 7203. In both of these statutes, "willfulness" is an element of the offense. The Supreme Court held that in order to meet its burden of proof on this element, the government had to negate the defendant's claim "that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of

the provisions of the tax laws." *Id.* at 202, 111 S.Ct. 604. According to Nash, if good faith was a valid defense in *Cheek*, it is also a valid defense in this case.

The district court attempted to distinguish *Cheek*, stating that the holding in *Cheek* "pivot[ed] upon the presence of willfulness." Because willfulness is not expressly stated as an element under 18 U.S.C. § 287, the district court ruled that the good faith defense did not apply. This distinction, however, is not persuasive, because 18 U.S.C. § 287 requires that Nash file the claims "knowing" that they are false, fictitious, or fraudulent. If Nash truly believed in good faith that he was not obligated to pay income taxes, and that he was owed these refunds, then he could not have filed his refund claims *knowing* that they were false, fictitious, or fraudulent. Rather, he would have believed that they were legitimate refund claims. Moreover, various courts have held that good faith is a potential defense to 18 U.S.C. § 287. *See, e.g., United States v. Upton,* 91 F.3d 677, 683 (5th Cir.1996) (holding that the defendants' good faith defense was substantially covered by the jury instructions); *United States v. Dorotich,* 900 F.2d 192, 193 (9th Cir.1990) (same); *Quinton v. Department of Transp.,* 808 F.2d 826, 828 (Fed.Cir.1986) (deferring to the Merit Systems Protection Board's conclusion that the defendant's good faith defense was incredible). For these reasons, we conclude that good faith is a valid defense to Counts 3, 4, and 5, and that the district court erred in instructing the jury otherwise.

■ Our conclusion does not result in a reversal of Nash's conviction, however, if we find that such an error was harmless. In *United States v. Mauldin,* 109 F.3d 1159, 1161 (6th Cir.1997), this court held that convictions should be upheld when the court is convinced that the jury would have convicted the defendant even if it had been properly instructed. In this case, by convicting Nash on Counts 1 and 2, the jury necessarily found that Nash had not acted on a good faith belief that he was exempt from the obligation to pay taxes. Nash asserted the same good faith defense as to Counts 3, 4, and 5. If the jury found that he did not have a good faith belief as to Counts 1 and 2, it would have necessarily found that he did not have a good faith belief as to Counts 3, 4, and 5. Any possible error in the jury instructions was therefore harmless.

Moreover, other circuits have held that "[t]he failure to give an instruction on a 'good faith' defense is not fatal so long as the court clearly instructed the jury as to the necessity of 'specific intent' as an element of the crime." *Dorotich,* 900 F.2d at 193; *see also Upton,* 91 F.3d at 683 ("This Circuit permits a district court to refuse to submit an instruction regarding a good faith defense if the defense is substantially covered by the charge given and the defendant has had the opportunity to argue good faith to the jury." (internal quotation marks omitted)). In this case, the district court clearly instructed the jury that it had to find that Nash knew that the claims were false, fictitious, or fraudulent at the time that he submitted them to the IRS. The district court's failure to given an additional instruction regarding the good faith defense was therefore harmless error.

For all of the above reasons, we affirm Nash's convictions.

### D. Sentence enhancement for obstruction of justice

■ Nash also claims that the district court improperly applied the two-level enhancement for obstruction justice pursuant to USSG § 3C1.1. Although a district court's findings of facts are reviewed under a clearly erroneous standard, its determination of whether the facts constitute an obstruction of justice is a mixed question of law and fact that is reviewed *de novo. See United States v. McDonald,* 165 F.3d 1032, 1034 (6th Cir.1999).

USSG § 3C1.1 states that if "the defendant willfully obstructed or impeded, or

attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing ..., increase the offense level by 2 levels." Application Note 4 lists the types of conduct to which this application applies, including "committing, suborning, or attempting to suborn perjury." USSG § 3C1.1, Application Note 4(b).

▆▆▆▆ In defining perjury, the United States Supreme Court has relied on the generally accepted definition provided in 18 U.S.C. § 1621, the federal criminal perjury statute. "A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). A defendant may not be found to have obstructed justice solely because he or she testified and is found guilty by a jury. *See United States v. Burnette,* 981 F.2d 874, 878 (6th Cir.1992). Rather, "the district court must specify what statements the defendant made that were perjurous." *United States v. Maliszewski,* 161 F.3d 992, 1030 (6th Cir. 1998).

▆▆▆▆ After reviewing all of the evidence and judging Nash's credibility, the district court concluded as follows:

> This is not a man who could reasonably be in a position to have believed in any sort of good faith what he was postulating to this jury. He falsified the evidence, virtually the entire thrust except maybe some of his biographical data, the entire thrust of his testimony was false. I find by the preponderance of the evidence it was material because it went to the heart of the truth or lack thereof of his proper good faith. And I find that the testimony of the Defendant soundly supports the suggestion of Government counsel that the obstruction enhancement should be added two levels.

In support of this conclusion, the district court referred to the second page of Nash's Exhibit 501, where the reader is urged to "bluff" in responding to the IRS. The district court found that this document advocated perjury, and that Nash had attempted to bluff the jury in this case. The evidence, according to the district court, demonstrated that Nash had lied when he testified that he had no financial motivations and that he believed that he was a nonresident alien.

The court also cited Exhibit 152E, a document indicating that Nash held back $25,000 in Medicare bills into the next year for tax planning purposes. According to the government, this document "totally belied [Nash's] statement that he was not a person subject to having to pay income taxes or the filing of income tax returns." In response to Nash's denial of authorship and his allegation that the exhibit came from his accountant, the district court stated that no one other than Nash would have had the knowledge or motivation to create this document.

Although not specifically mentioned by the district court during sentencing, the government presented other evidentiary support that may have influenced the court's determination that Nash committed perjury. In particular, the government cited Nash's 1991 Michigan State Income Tax Return and his receipt of a refund in the amount of $840. The government argued that the Michigan return was contrary to Nash's testimony at trial that he was not obligated to pay income taxes, that he had no financial motivations, and that financial motivations played no role in his decision to stop paying income tax. Nash admitted filing this return and receiving the refund, although he testified that he did not believe that he was legally required to file a return. He also argued that some of the material he received indicated a difference between state and federal citizenship, which led him to believe that being a citizen of one does not necessarily make him a citizen of the other.

The government also cited Nash's designation as a United States citizen on various investment applications, and argued that this directly contradicted Nash's testimony that he believed in good faith that he was a nonresident alien. Nash admitted at trial that he designated himself as a United States citizen on these applications, but pointed out that he had made repeated inquiries to the IRS regarding the basis of his citizenship for tax purposes, to which he received no response. He also noted that the bulk of the investment applications predated his conclusion that he was a nonresident alien, which, according to his testimony, crystallized in the mid-summer or fall of 1991. As for a 1993 application on which he again indicated that he was a United States citizen, Nash repeated that he was still writing the IRS during this period of time requesting an explanation of his citizenship and tax liability status.

The district court has the unique opportunity to witness the defendant's testimony and evaluate his or her credibility. This court has upheld the district court's finding of obstruction of justice "where the judge makes a *specific finding* that a defendant lied." *Burnette*, 981 F.2d at 879 (italics in original). In this case, because the district judge specified which of Nash's statements he believed were perjurous, and because there was supporting evidence introduced by the government, we affirm the application of the sentence enhancement for obstruction of justice.

**E. Sentence enhancement for tax loss greater than $120,000**

Finally, Nash claims that the district court improperly applied the two-level enhancement pursuant to USSG § 2T4.1(J) for a tax loss to the government of greater than $120,000. A district court's findings of fact are reviewed under a clearly erroneous standard. *See United States v. Latouf*, 132 F.3d 320, 331 (6th Cir.1997) ("A court's factual findings in relation to the application of the Sentencing Guidelines are subject to a deferential

'clearly erroneous' standard of review."), *cert. denied*, —— U.S. ——, 118 S.Ct. 1572, 140 L.Ed.2d 805 (1998).

USSG § 2T4.1 contains a tax table indicating the appropriate offense level for a given tax loss. According to the table, if a defendant has a tax liability of more than $70,000 but less than $120,000, the court is to apply Offense Level 14. USSG § 2T4.1(I). If the defendant has a tax liability of more than $120,000 but less than $200,000, the court is to apply Offense Level 15. USSG § 2T4.1(J).

Mr. Bak, a CPA retained by Nash, reported that Nash had a federal income tax liability of $11,033 for 1991 and $32,962 for 1992. The government's witness, Donald Hinkle, computed a slightly higher liability: $11,103 for 1991 and $33,174 for 1992. Because Nash also failed to file a tax return for 1993, Teneyuque computed that Nash owed $83,644 for that year. As part of her testimony, Teneyuque further stated that Nash owed significantly higher tax liabilities for 1991 and 1992—$20,199 and $45,600, respectively—than the amounts calculated by either Bak or Hinkle. There was, however, no testimony as to how Teneyuque calculated the figures for these earlier years, and because she prepared these figures prior to trial, she did not have the benefit of either Bak's or Hinkle's calculations. In making its determination, the district court accepted the lower figures determined by Bak for 1991 and 1992, thereby giving Nash the benefit of the doubt. When combined with Teneyuque's calculation for 1993, the court determined a total tax liability in the amount of $127,643 ($11,037 + $32,962 + $83,644 = $127,643). It therefore appropriately applied Offense Level 15, the offense level for a tax loss greater than $120,000.

Nash concedes the 1993 tax liability as computed by Teneyuque, but argues that the figures provided by Hinkle for 1991 and 1992 were 25–40% lower than those provided by Teneyuque for those years. According to Nash, his 1993 tax liability, calculated to be $83,644, should therefore

be discounted by the low end of this variance ($83,644 × 25% = $20,911), making his total tax loss $106,798 ($11,103 + $32,962 + $62,733 [$83,644—$20,911] = $106,798). Offense Level 14 would be the appropriate level for a tax loss of this amount.

Contrary to Nash's assertions, the district court properly concluded that Nash had a tax liability of greater than $120,000. First, although it did not have to do so, it utilized the figures for 1991 and 1992 as determined by Bak, thereby giving Nash the benefit of the lowest figures. Second, there is no evidence explaining how Teneyuque calculated Nash's tax liabilities for those years. Third, Nash's argument that he should receive the benefit of the variance between Teneyuque's and Hinkle's figures for 1991 and 1992 in calculating his 1993 tax liability has no legal support. The district court therefore properly calculated Nash's tax loss and applied the appropriate offense level.

## III. CONCLUSION

For all of the reasons stated above, we **AFFIRM** Nash's conviction and sentence enhancements.