**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Linnel Carl GRAHAM, Defendant–Appellant.**

No. 00–5973.

United States Court of Appeals,
Sixth Circuit.

Dec. 21, 2001.

Before CLAY and GILMAN, Circuit Judges; and EDGAR, Chief District

Judge.*

## OPINION

EDGAR, Chief District Judge.

Defendant-appellant Linnel Carl Graham appeals his sentence. A jury convicted Graham of knowingly possessing counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 472. He appeals on the grounds that (1) the facts relied upon by the district court in its imposition of sentencing enhancements for relevant conduct and obstruction of justice must be proved beyond a reasonable doubt to the jury pursuant to the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (2) the district court erred in its factual findings that determined Graham's relevant conduct pursuant to U.S.S.G. § 1B1.3; and (3) the district court erred by enhancing Graham's offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1. We **AFFIRM** the district court.

## I. BACKGROUND

Graham was indicted for the manufacture and possession of counterfeit Federal Reserve Notes in violation of 18 U.S.C. §§ 471, 472. Prior to trial, Graham faced the charge of criminal possession of counterfeit in state court, to which he pleaded guilty.

During the federal jury trial, the government presented proof through the testimony of United States Secret Service Special Agent Steven Mixon, Graham's partner in crime, Bertrel Holt, and Jeremy Morris, an acquaintance of Graham who corroborated that Graham was the printer of counterfeit money. Their testimony established that during the summer of 1998,

Graham and Holt began a counterfeiting operation whereby they produced several thousands of counterfeit dollars that they sold to various individuals for a reduced price.

Holt was arrested by the United States Secret Service for selling counterfeit currency to an informant. The agents seized the currency sold to the informant, other currency found in Holt's vehicle, and several uncut sheets of paper, some of which were blank and some of which had four counterfeit one hundred dollar bills copied on them. Graham's fingerprints were later found on the uncut sheets of paper. A total of $12,000.00 in counterfeit bills was seized from Holt. The Secret Service later recovered $31,000.00 in counterfeit bills that had the same serial numbers as the counterfeit currency seized from Holt. Holt also told Agent Mixon about Graham's involvement in another counterfeit manufacturing scheme with Derico Houston in which the two men attempted to sell $50,000.00 in counterfeit currency to another individual in the Memphis area.

Trial testimony revealed that after his arrest, Holt arranged a meeting with Graham, the source of the counterfeit currency. During the meeting, Graham set the selling price for the counterfeit money. Secret Service agents arrested Graham soon after. Agent Mixon found a counterfeit hundred dollar bill and a counterfeit twenty dollar bill in a credit card compartment in Graham's wallet. Graham indicated to the agents that he had obtained the counterfeit money from Holt. The serial numbers on Graham's bills matched those on the counterfeit seized from Holt. According to Agent Mixon, Graham stated that the only reason why he still had the

---

* The Honorable R. Allan Edgar, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

counterfeit money was because he "hadn't found the right person to pass it off to yet."

Graham testified on his own behalf at trial. Graham denied any involvement in printing or making counterfeit money with Holt, although he admitted that Holt had shown him some counterfeit money on one occasion. He stated that he did not know the bills found in his wallet were counterfeit and denied making the statement about finding "the right person to pass it off to yet." Graham testified that he pleaded guilty to criminal possession of counterfeit bills in state court only to avoid a jail sentence and that he was totally innocent of the charges.

A jury convicted Graham on the charge of possession of counterfeit in violation of 18 U.S.C. § 472, yet acquitted him of manufacturing counterfeit Federal Reserve Notes. At the sentencing hearing, the district court concluded that the testimony of Agent Mixon was credible and that the "testimony of Graham was false." The district court emphasized that the testimony of Holt was not generally believable, but that he found Holt was telling the truth about some things, specifically, that Graham was, in fact, the printer of the counterfeit. After concluding that the government's contention was supported by a preponderance of the evidence, the district court enhanced Graham's offense level for obstruction of justice and increased the base offense level to account for the total face value of counterfeit produced by Graham, i.e., $93,000.00. Graham challenged at sentencing the adjustments to the base offense level but not the standard the district court applied. Graham was subsequently sentenced to 33 months imprisonment. A timely notice of appeal followed.

## II. ANALYSIS

### A. *Apprendi*

Where there was no objection to a challenged determination in the district court, such as the *Apprendi* challenge here, review is for plain error. *See United States v. Page*, 232 F.3d 536, 543–44 (6th Cir. 2000), *cert. denied*, 532 U.S. 1056, 121 S.Ct. 2202, 149 L.Ed.2d 1032 (2001); FED. R. CRIM. P. 52(b).

In *Apprendi*, the Supreme Court reexamined and confirmed as a rule of constitutional law the principle first expressed in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490; *see United States v. Munoz*, 233 F.3d 410, 413–14 (6th Cir.2000); *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir.2000). When Graham committed his offense of conviction, 18 U.S.C. § 472 provided for a penalty of not more than fifteen years (or 180 months) of imprisonment. Because Graham's 33–month sentence is less than the statutory maximum, *Apprendi* is not applicable. *See Munoz*, 233 F.3d at 413–14; *Corrado*, 227 F.3d at 542. Therefore, the district court did not err in utilizing a preponderance of the evidence standard.

### B. *Relevant Conduct*

The base offense level for counterfeit offenses is governed by U.S.S.G. § 2B5.1. This guideline directs the court to increase the base offense level where the face value of the counterfeit items exceeds $2,000.00, pursuant to the table in U.S.S.G. § 2F1.1. The district court increased Graham's base offense level by six levels because it determined that Graham printed approximately $93,000.00 in counterfeit

currency. *See* U.S.S.G. § 2F1.1(b)(1)(G). Graham argues on appeal that the district court improperly calculated his sentence by including the value of counterfeit money that Graham claims was not part of or related to his count of conviction. Graham argues that the district court's findings—that he was the printer of counterfeit and the amount of counterfeit attributable to him was approximately $93,000.00—are clearly erroneous. The government, on the other hand, argues that the printing of approximately $93,000.00 in counterfeit bills constitutes conduct relevant to Graham's count of conviction. A district court's factual findings at sentencing is reviewed for clear error, while the court's application of the sentencing guidelines to those facts is reviewed *de novo. United States v. Shafer,* 199 F.3d 826, 830 (6th Cir.1999).

"Relevant conduct" is defined in U.S.S.G. § 1B1.3. It provides in relevant part that

> [S]pecific offense characteristics ... shall be determined on the basis of the following:
>
> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3.

There was ample basis for the district court's conclusion by a preponderance of the evidence that Graham printed the counterfeit money. First, Holt's testimony established that Holt and Graham were involved in the production of counterfeit during the summer of 1998. Second, the testimony of Jeremy Morris corroborated the fact that Graham produced the counterfeit. Third, the recorded meeting between Holt and Graham on the night of their arrest pointed to Graham as the one who set the sale price for the counterfeit. The existence of Graham's fingerprints on the uncut sheets of paper containing photocopied dollar bills also established his involvement in the manufacture of the counterfeit. Finally, Agent Mixon's testimony regarding Holt and Morris also clearly demonstrated that Graham was the printer of the counterfeit. The district court did not err in concluding that Graham printed the counterfeit bills and that the value of all the counterfeit produced by Graham should be included in the specific offense characteristic of his offense of conviction—possession of counterfeit Federal Reserve Notes. The possession of the counterfeit was made possible by its manufacture and was clearly part of a common scheme.

The amount of counterfeit produced by Graham presents a more difficult question. The district court determined that Graham produced $93,000.00 in counterfeit currency. This figure is comprised of $12,000.00 seized from Holt, $31,000.00 recovered later by the Secret Service, and $50,000.00 that Graham and Derico Houston attempted to sell to another individual. Graham's strongest argument is that the information regarding the attempted sale of the $50,000.00 of counterfeit came solely from

Bertrel Holt, a witness that even the district court found incredible. In response to this argument, however, the district court found that certain aspects of Holt's testimony, including the fact that Graham was the printer, was credible. The district court further found that the information that Agent Mixon elicited from Holt in a non-adversarial environment was trustworthy. The district court did not commit clear error in its findings of fact.

### C. Obstruction of Justice

■ At sentencing the district court concluded that Graham had obstructed justice and therefore enhanced his offense level pursuant to U.S.S.G. § 3C1.1. Graham argues that the district court erred because the enhancement was a misapplication of the guidelines and was not supported by a preponderance of the evidence.

The standard of review to be utilized when evaluating a district court's application of U.S.S.G. § 3C1.1 is "best articulated as a three-step process of review." *United States v. McDonald,* 165 F.3d 1032, 1034 (6th Cir.1999). First, the court's factual findings in relation to guidelines determinations are reviewed under a clearly erroneous standard. *See id.* (citation omitted). Second, "a district court's determination of whether the facts constitute an obstruction of justice is a mixed question of law and fact that is reviewed *de novo.*" *Id.* (citation omitted). Third, "once there has been a finding of obstruction of justice, the court must apply the enhancement .... Because the enhancement language of the guideline is mandatory rather than discretionary, such enhancement is reviewed under the *de novo* standard." *Id.*

Section 3C1.1 of the sentencing guidelines provides for an increase in the offense level by two levels:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of an investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

U.S.S.G. § 3C1.1. This enhancement applies to conduct such as "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1 cmt. n. 4(b).

A defendant who, while testifying under oath, "gives false testimony concerning a material matter with the willful intent to provide false testimony" has committed perjury for the purposes of the obstruction of justice enhancement. *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993); *see United States v. Nash,* 175 F.3d 429, 438 (6th Cir.1999). The term "material" is defined as evidence that "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n. 6. Under *Dunnigan,* the district court is required to "make independent findings with respect to each element of perjury, or at least make a finding that 'encompasses all of the factual predicates for a finding of perjury.'" *United States v. McRae,* 156 F.3d 708, 712 (6th Cir.1998) (citing *Dunnigan,* 506 U.S. at 95). The district court must also "identify for the record at least some specific instances of conflicting testimony and specify which portions he finds materially perjurious ... [and] explain why the intentional perjury was material." *McRae,* 156 F.3d at 713 (internal quotations and citations omitted).

Graham reminds this Court that a defendant's denial of guilt is not a basis for application of the obstruction of justice enhancement. *See* U.S.S.G. § 3C1.1 cmt. n. 2. However, a denial of guilt under oath that constitutes perjury is an appropriate

basis for the enhancement. *See id.* Graham further states that "not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." *Id.*

At sentencing, the district court engaged in a detailed analysis of the factual basis for the obstruction enhancement. Supported by an extensive record, the district court concluded that Graham had committed perjury several times during trial. First, he denied knowledge of counterfeit currency in his wallet and he denied making the statement to Agent Mixon. The district court believed Agent Mixon's testimony and, consequently, disbelieved Graham's testimony. Graham contends that "the issue of who to believe is a matter that is left to the jury." At the sentencing stage of the proceedings, however, deference to the jury's fact-finding role is not appropriate. *United States v. Medina*, 992 F.2d 573, 591 (6th Cir.1993). The district court found that Graham did make the statement that he had not found "the right person to pass it off to yet." The district court determined that this statement showed that Graham knew of the counterfeit bills in his wallet.

Second, Graham denied his involvement in the printing of counterfeit. The district court determined that Holt's testimony on this issue was credible and supported the notion that Graham was the printer of counterfeit. The district court also noted the fact that Graham's fingerprints were on the uncut paper and that Graham, not Holt, had set the sale price for the counterfeit on the night of their arrest.

Third, Graham denied that he was guilty of the state charge. The record shows that this also is a false statement. The basis of the state charge is the same as the instant offense. Graham argues that he was confused by the cross-examination at trial and his testimony regarding the state charge was not a willful attempt to ob-

struct justice. In any event, the district court's findings that Graham committed perjury are supported by more than a preponderance of evidence and, thus, the district court did not commit error. Furthermore, these findings support the application of the obstruction of justice enhancement. *See Nash*, 175 F.3d at 437–39 (applying enhancement where a defendant testified in a materially false manner at trial).

### III. CONCLUSION

The sentence imposed by the district court is **AFFIRMED.**