UNITED STATES of America,
Plaintiff–Appellee,

v.

Gary Steven TAULBEE, Defendant–
Appellant.

No. 02–5021.

United States Court of Appeals,
Sixth Circuit.

Jan. 23, 2004.

Charles P. Wisdom, Jr., Robert E. Rawlins, John Patrick Grant, Asst. U.S. Attorneys, Lexington, KY, Plaintiff–Appellee.

Paul J. Neel, Jr., Louisville, KY, Gary Steven Taulbee, #08108–032, pro se, Manchester, KY, for Defendant–Appellant.

BEFORE: KRUPANSKY, MOORE, and ROGERS, Circuit Judges.

KRUPANSKY, Circuit Judge.

The defendant-appellant, Gary Steven Taulbee ("Taulbee"). has contested his jury conviction and sentence for bank fraud and related offenses, charging that the district judge averredly displayed bias against him via statements made during a sidebar conference, prejudiced him by admitting allegedly irrelevant and inflammatory "lifestyle" evidence, and purportedly mis-instructed the jurors regarding a legal element of federal bank fraud as allegedly misstated in the indictment.

During much of the 1990s. Taulbee prospered as a residential builder. However, he began to confront financial difficulties by early 1998. Nevertheless, the defendant persisted thereafter in his well-established extravagant spending patterns which had fueled the "jet-set" lifestyle to which he had become accustomed, which included frequent purchases of luxury automobiles, jewelry, and lavish vacations for himself and his friends, as well as the regular indulgence of his high-stakes gambling habit. To feed his cash addiction after his legitimate business earnings had evaporated. Taulbee concocted a scam in April 1998 whereby he would fraudulently obtain federally-insured construction loans from financial institutions by tendering falsified real estate purchase contracts to them. Typically, the loans were secured by the subject realty and the home to be constructed thereon; occasionally Taulbee pledged additional property as security for a bank debt.

Taulbee's initial false contract reflected that certain bona fide property buyers, the Cobanes. had made only a small down payment for the erection of a residence, and therefore the defendant required a substantial bank loan for the balance of the construction costs; whereas in fact the buyers had paid the full purchase price in cash. Thereafter, Taulbee created additional fake contracts between himself as seller, an accomplice (usually Daniel Lunsford) as buyer, and another accomplice (Cary True) as real estate broker, of houses purportedly under construction at addresses which in fact were vacant parcels where Taulbee was not building anything. In reliance upon those deceptive documents, various banks advanced more than $1.8 million in supposed construction funds to the defendant. After the confidence scheme was discovered, the victimized lending institutions collectively recovered most of their monies through foreclosures of their various security interests in Taulbee's realty; however, an aggregate sum of $717,791.66 in loan advances remained unrecovered by the institutional lenders after the exhaustion of Taulbee's encumbered assets.

On December 7, 2000, a federal grand jury indicted Taulbee, Lunsford, and True on one count of defrauding an agency of the United States, namely the Federal Deposit Insurance Corporation (FDIC), contrary to 18 U.S.C. § 371; eight counts of federal bank fraud and conspiracy in viola-

tion of 18 U.S.C. §§ 1014 and 2; and two counts of attempted bribery of a bank officer in offense to 18 U.S.C. § 215(a)(1).[1] In April 2001, following a four-day jury trial. Taulbee was convicted of the government fraud count, plus all eight bank fraud and conspiracy charges, but was acquitted of both bribery counts. On August 20, 2001, the sentencing court imposed a cumulative imprisonment term of 78 months, to be followed by three years of supervised release, plus restitution totaling $717,791.66 and a special assessment of $900.00.

On review, Taulbee has initially argued that the trial judge betrayed bias against him during a sidebar conference conducted during the prosecution's case-in-chief while the jury was in recess outside of the courtroom. During that discourse, which concerned the erstwhile testimony of co-defendant Cary True, the presiding judge, among other things, remarked to counsel that "they [the defendants] were smart" in reference to the conspirators *modus operandi,* and further inquired about whether any evidence would indicate that True had shared in Taulbee's ill-gotten lucre. Taulbee has postulated that those judicial articulations revealed that the trial judge had pre-judged his guilt prior to the close of the evidence, which purportedly denied him due process of law and the legal presumption of innocence prior to the submission of all material evidence; and that he had been actually prejudiced by that asserted pre-judgment in that the trial court ultimately denied his Fed.R.Crim.P. 29 motions for judgment of acquittal initiated both following the prosecution's case-in-chief and after the close of all proofs, presumably by reason of the court's charged prejudgment.

The defendant has conceded that his trial lawyer failed to move contemporaneously for a mistrial or to otherwise object to the faulted bench commentary: therefore his procedurally defaulted challenge is examined for "plain error." *See* Fed. R.Crim.P. 52(b). "Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *United States v. Krimsky,* 230 F.3d 855, 858 (6th Cir. 2000). "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton,* 535 U.S. 625, 631–32, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). (Citations and brackets omitted).

■ A careful examination of the district judge's implicated comments, in the full context of the sidebar conference as well as the overall trial, discloses that the lower court had committed no prejudicial error. The subject judicial inquiries to the attorneys were designed to clarify the prosecution's theory of the case. The trial judge has a duty to "conduct the trial in an orderly fashion, to ensure that the issues are not obscured and to act at all times with a view toward eliciting the truth." *United States v. Tilton,* 714 F.2d 642, 643 (6th Cir.1983) (per curiam). The district court had accorded counsel for both the government and the defense equal opportunities to contribute to the sidebar conference and to respond to queries and remarks.

1. Taulbee had been charged with offering Steven Smith, an officer of the First Lancaster Federal Savings Bank, cash sums totaling

$1,800.00 and $5,000.00, respectively, as inducements for the approval of two requested fraudulent construction loans.

Moreover, nothing expressed by the presiding judge displayed any extra-judicial personal bias against Taulbee, as opposed to impressions founded upon information collected within the confines of the litigation. *See Reed v. Rhodes,* 179 F.3d 453, 468 (6th Cir.1999). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). On the overall instant record, no reasonable, objective observer could conclude that the trial judge had displayed any detrimental partiality against Taulbee. *United States v. Hough,* 276 F.3d 884, 899 (6th Cir.), *cert. denied,* 535 U.S. 1089, 122 S.Ct. 1986, 152 L.Ed.2d 1042 & 537 U.S. 898, 123 S.Ct. 199, 154 L.Ed.2d 169 (2002).

To the contrary, the district judge's crediting of the prosecution's evidence against Taulbee prior to the admission of any defense evidence *for purposes of the sidebar conference* was not prejudicial error, because at that stage of the litigation, the salient issue before the court was whether the United States had presented sufficient evidence which, if believed by the jury, could sustain a guilty verdict against the defendant. Hence, the trial court's denials of Taulbee's Rule 29 motions, anchored in the presumptive accrediting of the government's evidence irrespective of any defense proof, was not prejudicial error, but instead conformed to well-established legal standards. *See, e.g., United States v. Villarce,* 323 F.3d 435, 438 (6th Cir.2003) ("Where a motion for a judgment of acquittal has been denied, our task is to determine whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, any rational trier of fact could find the elements of the crime beyond a reasonable doubt."). (Citations, internal quotation marks, and italics omitted).

Indeed, the defendant's failure to argue on appeal that the record evidence was legally insufficient to sustain his convictions comprises, in essence, a concession that the trial court's denials of his motions for judgment of acquittal were correct.

At bottom, Taulbee's guilt on nine of eleven counts of the indictment was unanimously found beyond a reasonable doubt by twelve neutral and impartial jurors who had not been exposed to the assailed judicial comments. "Much of the concern about an otherwise inappropriate judicial act or remark is neutralized by the absence of the jury." *United States v. Morrow,* 977 F.2d 222, 225 (6th Cir.1992) (en banc). Accordingly, a judge's improper remark which might otherwise constitute prejudicial misconduct supporting a mistrial is rendered harmless if made during a sidebar conference outside of the jury's presence. *United States v. Glover,* 21 F.3d 133, 136 (6th Cir.1994); *United States v. Seago,* 930 F.2d 482, 491 (6th Cir.1991). *Cf. Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (explaining that the presumption of innocence requires the *trier of fact* to avoid prejudgments adverse to the defendant): *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (propounding that a criminal defendant has a due process right to an unbiased *fact-finder* ).

Therefore, no reversible error inhered in the trial adjudicator's sidebar statements in controversy.

Next, Taulbee has contended, also for the first time, that the trial court had prejudiced him by allowing evidence of his extravagant lifestyle and lavish spending habits to go to the jury. Although proper-

ly preserved evidentiary rulings are ordinarily scrutinized for abuse of discretion, *United States v. Mack,* 258 F.3d 548, 553 (6th Cir.2001), Taulbee's forfeiture below of his evidentiary objection at issue subjects it to "plain error" review. *Bowman v. Corrections Corporation of America,* 350 F.3d 537, 548 (6th Cir.2003). By either measure, the district court did not err by admitting that proof, because it was directly probative of Taulbee's criminal motive and objective which had animated his charged conspiratorial scheme to dupe federally-insured financial institutions out of large amounts of cash.

■ The defendant has maintained that much of the admitted "lifestyle" evidence concerned events which pre-dated his initial fraudulent bank transaction, and thus was averredly irrelevant and potentially inflammatory, because (the defendant argues) the fiscal resources for those costly purchases presumably had been generated by legitimate means. However, the government did *not* proffer evidence of those pre-fraud extravagances as proof that Taulbee was spending large amounts of unaccounted-for and hence facially illegitimate cash. Rather, that evidence was offered to prove Taulbee's pre-existing and well-established *pattern of excessive expenditures* to buttress the inference that, *after* his business collapsed in the late 1990s, he was driven to pursue alternate, and unfortunately illegal, means of securing a continued steady inflow of disposable cash. Accordingly, both Taulbee's pre-fraud and post-fraud spending practices were directly relevant to the prosecution's case, and that relevance was not outweighed by any risk of undue prejudice. *See* Fed.R.Evid. 403.

■ At any rate, even assuming *arguendo* that the evidence in controversy would have been excludable if a proper objection had been mounted, the admission of that evidence did not offend case-controlling "plain error" strictures, because no substantial right of the defendant was adversely impacted by that evidence to any material degree. The overall record proof of Taulbee's guilt of his crimes of conviction was conclusive. Hence, no material possibility exists that the jurors' verdict would have been more favorable to the defendant if the faulted evidence had been excluded. *See* Fed.R.Crim.P. 52(a); *Ford v. Curtis,* 277 F.3d 806, 808 (6th Cir.). *cert. denied,* 537 U.S. 846, 123 S.Ct. 185, 154 L.Ed.2d 73 (2002); *United States v. Fountain,* 2 F.3d 656, 668 (6th Cir.1993).

■ Finally, although he was represented by appellate counsel, Taulbee has advanced *pro se* a novel contention on review, to wit, that the presiding judge had prejudiced him by erroneously instructing the jury on a legal element of federal bank fraud by reproducing an averred misstatement of the law recited in the indictment. The defendant has contended that 18 U.S.C. § 1014, the statute governing "loan and credit application fraud," requires proof of *"any* false statement or report" which was knowingly given by the defendant "for the purpose of influencing in any way [a lending institution] upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan;" whereas the instant indictment had charged, and the subject court-issued jury charges had instructed that the jurors must find, that the defendant had given a *"materially* false statement" under the statutory conditions.

Ordinarily, the legal correctness of a jury charge is subject to plenary review. *United States v. Newcomb,* 6 F.3d 1129, 1132 (6th Cir.1993). However, because the defendant failed to preserve his challenge to the jury instructions in the trial court, they are assessed on review for plain error. *United States v. Jones,* 108 F.3d 668, 670 (6th Cir.1997) (en banc). No revers-

ible error exists in jury instructions unless "viewed as a whole [they] were confusing, misleading or prejudicial." *Innes v. Howell Corp.*, 76 F.3d 702, 714 (6th Cir.1996).

Taulbee's *pro se* assault was entirely misconceived. Although the Supreme Court in *United States v. Wells*, 519 U.S. 482, 490, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997), rejected *the defendants'* argument that "materiality" *should* be incorporated as an implicit term of § 1014,[2] the Court did *not* resolve that it would be legal error for a § 1014 indictment to charge the defendant with having made a "materially" false statement, and/or for jury instructions to charge the fact-finders that they must find a "materially" false statement as a § 1014 element predicate to conviction. Stated differently, simply because *a defendant is* not entitled *to* a § 1014 indictment allegation or jury charge which includes a "materiality" qualifier, it certainly does *not* follow that he is *prejudiced* if his § 1014 indictment and/or jury charge *does* include the word "material" or the concept of "materiality." Indeed, the addition of "material" to the subject indictment and jury charge *benefitted* Taulbee by narrowing the scope of possible proofs, from *any* "false statement" to only those which were *"materially* false."[3] Accordingly, any identified "error" in the indictment and/or jury instructions was beneficial, rather than prejudicial, to the defendant.[4]

This reviewing court has carefully examined the trial record, the briefs and all arguments of counsel and the defendant, and the controlling law. It has identified no reversible error. Accordingly, the instant judgment of conviction and sentence against defendant Gary Steven Taulbee is **AFFIRMED.**

2. *See also United States v. Nash*, 175 F.3d 429, 434 (6th Cir.1999) (observing that the absence of the word "material" from § 1041 has meaning: therefore a "material" misrepresentation is not required).

3. Taulbee's allegation that the "materiality" qualifier in the indictment either caused him to be charged with, and convicted of, a non-existent statutory offense, or to be convicted of an offense which had not been properly pleaded in the indictment, was also ill-formulated. As developed herein, the grand jury's indictment had properly alleged that Taulbee had made "false statements" to financial lenders under the requisite statutory conditions, and the jury found beyond a reasonable doubt that Taulbee had acted as charged. The fact that the indictment and jury instructions had qualified the "false statement" element with a "materiality" aspect did not detract from the ultimate reality that requisite "false statements" were charged in the indictment and found by the jurors. The addition

of factual allegations in an indictment charge or jury instruction which are more specific than the minimally required bare legal elements does not invalidate the indictment charge or jury instruction.

4. On October 10, 2003, Taulbee tendered a *pro se* application for leave to file a second *pro se* brief, by which he sought to argue that his trial lawyer had rendered constitutionally ineffective assistance by failing to frame the "materiality" objections to the indictment and jury charges discussed above. On November 10, 2003, this court denied that motion; thus the defendant's "ineffective assistance" argument is not presently before this court. In all events, because, as evolved herein, the "materiality" contention was ill-conceived as a matter of law, defense counsel's failure to advance it could not have constituted ineffective assistance. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).