**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3597

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Marco A. Lopez, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 14, 1997

Filed: July 7, 1997

_____

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Marco A. Lopez appeals from the sentence imposed by the district court[1] following his plea of guilty to one count of possessing cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We affirm.

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

## I.

In December of 1995, Lopez came under suspicion for trafficking in cocaine and methamphetamine. Working with a confidential informant (CI), Iowa Department of Narcotics Enforcement (DNE) officer Ronald Deist, Jr. purchased cocaine from Lopez three times in December of 1995: one ounce (27.03 grams) on December 7, one ounce (25.18 grams) on December 19, and another two ounces (53.59 grams) on December 21. During a conversation on December 15, 1995, the CI requested one ounce of methamphetamine or, if no methamphetamine was available, one ounce of cocaine. Lopez informed the CI that he had sold his methamphetamine and had only cocaine for sale.

On January 8, 1996, Deist met with Lopez and inquired as to the possibility of purchasing larger quantities of methamphetamine from Lopez. Lopez initially responded that he could sell three-fourths of a pound of methamphetamine. The following day, Lopez informed Deist that his source had sold that methamphetamine, but that he had another source from whom he could procure "yellow" or "red" methamphetamine. Deist requested twelve ounces of yellow methamphetamine. Lopez instructed Deist to meet him later that evening for delivery of the yellow methamphetamine. Lopez failed to appear at the designated time, however, fearing that law enforcement officers were observing him.

A second confidential informant, Carlos Rush, advised DNE that he previously had purchased a large amount of cocaine and methamphetamine from Lopez. Cooperating with DNE, Rush met with Lopez on January 30 and informed him that he desired to purchase nine ounces each of cocaine and methamphetamine. Lopez informed Rush that he could probably provide one pound of methamphetamine and six ounces of cocaine. He instructed Rush to meet him the next day so that Lopez could introduce Rush to his source, who, Lopez assured, could obtain as many pounds of methamphetamine as Rush desired.

On January 31, Lopez escorted Rush to a bar, where Rush met with Lopez's source, Jorge Pimentel. Rush informed Pimentel that he wanted to purchase one pound of methamphetamine and nine ounces of cocaine. Pimentel told Rush that he was out of cocaine but could sell five pounds of methamphetamine. Rush stated that he was interested in two pounds of methamphetamine but that he had to get money together. Pimentel instructed Rush to call the following day.

Rush and Pimentel met the next day, and Pimentel stated that he would sell Rush any amount of methamphetamine for $13,000 per pound. Rush agreed to purchase three pounds of methamphetamine. On February 6, Rush and Pimentel met in a hotel room to conduct the transaction. Pimentel informed Rush that he had one pound of methamphetamine and would get the two additional pounds in forty-five minutes. Officers who had been waiting in the adjoining room arrested Pimentel after the transaction for the first pound (279.44 grams) was completed. A subsequent laboratory analysis revealed that the substance Pimentel had attempted to sell was amphetamine rather than methamphetamine.

On March 7, Deist, who was following Lopez to Lopez's house to complete a cocaine transaction, decided to arrest Lopez and forego the transaction after Lopez exhibited erratic behavior. On pat-down, Deist discovered five ounces (139.22 grams) of cocaine in Lopez's pocket.

Lopez was charged with one count of conspiracy to distribute and possess with intent to distribute methamphetamine and cocaine, three counts of distributing cocaine, one count of aiding and abetting the distribution of amphetamine purported to be methamphetamine, and one count of possession with the intent to distribute cocaine. Lopez pled guilty to possession with the intent to distribute cocaine, with the other counts being dismissed.

The presentence report (PSR) attributed to Lopez 245.02 grams of cocaine and 837 grams of methamphetamine (279 grams of purported methamphetamine that Pimentel delivered, multiplied by three for the three pounds negotiated).  At sentencing, the district court adopted the PSR calculation of a base offense level of 30.  The court then applied a two-level reduction under the "safety valve," U.S.S.G. § 5C1.2, a two-level reduction for being a minor participant in the methamphetamine transaction, and a three-level reduction for acceptance of responsibility, resulting in an offense level of 23.  The district court sentenced Lopez, a first-time offender, to 46 months' imprisonment, the lowest sentence within the applicable range, to be followed by a three-year period of supervised release.

## II.

Lopez's sole claim on appeal is that the district court erred in using the methamphetamine guideline in calculating the drugs attributable to him as a result of the transaction between Pimentel and Rush.  Lopez does not contest the district court's conclusions that the agreement was for methamphetamine or that Lopez's act of aiding and abetting the agreement was relevant conduct.  He argues, however, that his sentence should be based on amphetamine, the substance actually distributed.  The question whether the district court properly based Lopez's sentence on intended conduct rather than actual conduct involves application of the Sentencing Guidelines to the facts, and we thus review the district court's decision de novo.  See United States v. Wilson, 49 F.3d 406, 409 (8th Cir.), cert. denied, 116 S. Ct. 384 (1995).

The Sentencing Guidelines call for the inclusion of  "types and quantities of drugs not specified in the count of conviction," U.S.S.G. § 2D1.1, comment n.12, that were "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).  Where a defendant negotiated for or attempted to receive a specific substance but that substance was, unanticipated by and unbeknownst to the defendant, replaced with a different substance, the defendant's

culpable conduct is most accurately evaluated by ascribing to the defendant the intended rather than the unintended substance. See United States v. Steward, 16 F.3d 317, 321 (9th Cir. 1994) (sentence following attempt conviction was correctly based on methamphetamine, even though substance defendant sold as methamphetamine was actually ephedrine he had been duped into purchasing earlier that day).[2] The negotiation itself constitutes the defendant's relevant conduct, and "[t]he nature and seriousness of [the defendant's] conduct is the same no matter" what substance was actually delivered. United States v. White, 888 F.2d 490, 498 (7th Cir. 1989) (sentence was correctly based on full amount of original cocaine shipment even though drug enforcement officers replaced all but 1.88 grams of cocaine with sugar); see United States v. Franklin, 926 F.2d 734, 736-37 (8th Cir. 1991) (following White and holding that defendant's sentence was properly based on original amount of cocaine in parcel rather than amount defendant actually received after postal inspectors replaced most of the cocaine with flour).

Steward, White, and Franklin foreclose Lopez's argument that his sentence should be based on amphetamine. The seriousness of Lopez's conduct is most accurately accounted for by basing his offense level on methamphetamine, for methamphetamine, not amphetamine, was the drug involved in Lopez's scheme or plan. There is no doubt, and Lopez concedes, that he intended to aid and abet a transaction involving methamphetamine.[3] The agreement between Rush and Pimentel was for the

---

[2]The fact that Lopez was not convicted of attempt or conspiracy charge does not alter our analysis for sentencing purposes. Negotiations constitute relevant conduct regardless of whether the defendant's underlying conviction was for attempt or conspiracy. See United States v. Williams, 994 F.2d 1287, 1292 (8th Cir. 1993). "The Guidelines treat success and failure, conviction and no conviction, alike in drug cases, so long as the amounts are ascertainable." United States v. White, 888 F.2d 490, 499 (7th Cir. 1989).

[3]This case is thus unlike United States v. Owens, 904 F.2d 411 (8th Cir. 1990). In Owens, the jury instructions referred to "methamphetamine/amphetamine" in the alternative, and the evidence at trial as to which substance the defendant distributed conflicted. We held that, because the substance for which the defendant was responsible was unclear, the district court improperly based the defendant's sentence on methamphetamine. Because Lopez concedes he intended to distribute methamphetamine, the uncertainty that gave us pause in Owens is not present here.

-5-

delivery of methamphetamine, and Pimentel represented the substance as methamphetamine. The fact that the substance Pimentel delivered was amphetamine and not methamphetamine was merely fortuitous. "The seriousness of [Lopez's] unlawful conduct is . . . no[t] decreased by what happened to be in the package." United States v. Davern, 970 F.2d 1490, 1495 (6th Cir. 1992) (en banc) (following White and holding that the sentence should be based on the 500 grams of cocaine defendant intended to receive even though defendant actually received only 85 grams of cocaine). In addition, Lopez had previously sold methamphetamine to Rush and had attempted several times to arrange methamphetamine transactions with Deist. Amphetamine was never part of Lopez's scheme or plan. The district court therefore properly concluded that Lopez's sentence should be based on the methamphetamine guideline.

The sentence is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-