RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0404P (6th Cir.)
File Name:  00a0404p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

No. 99-5652

ZAFERINO QUINTELA MUNOZ,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 98-00103—Curtis L. Collier, District Judge.

Argued:  September 21, 2000

Decided and Filed:  November 27, 2000

Before:  MERRITT, KENNEDY, and GILMAN, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:**  David F. Ness, FEDERAL DEFENDER
SERVICES OF EASTERN TENNESSEE, INC.,
Chattanooga, Tennessee, for Appellant.  Gregg L. Sullivan,
ASSISTANT UNITED STATES ATTORNEY, Chattanooga,
Tennessee, for Appellee.  **ON BRIEF:**  David F. Ness,
FEDERAL DEFENDER SERVICES OF EASTERN
TENNESSEE, INC., Chattanooga, Tennessee, for Appellant.

1

Paul W. Laymon, Jr., ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

KENNEDY, J., delivered the opinion of the court, in which MERRITT, J., joined. GILMAN, J. (pp. 12-13), delivered a separate concurring opinion.

———————

**OPINION**

———————

KENNEDY, Circuit Judge. Defendant Zaferino Munoz was arrested and indicted on one count of conspiracy to distribute cocaine and methamphetamine. Defendant pled guilty to the indictment, with the explicit reservation that he did not admit to conspiring to deliver methamphetamine but only admitted to the cocaine and amphetamine that was actually delivered. The district judge sentenced defendant to 121 months in prison, based in part on his conclusion that defendant did conspire to distribute methamphetamine. This court reviews the validity of defendant's guilty plea and his sentence. For the reasons set forth below, we AFFIRM the district court's sentence enhancement based on defendant's role in the conspiracy but REVERSE the district court's determination that the sentence should be based on methamphetamine. We REMAND to the district court for determination of a new sentence consistent with this opinion.

**I.**

Defendant's arrest on August 10, 1998 resulted from an investigation undertaken by the Tennessee Bureau of Investigation and the Cleveland, Tennessee Police Department. The investigation produced taped conversations between defendant and a confidential informant and between defendant, his coconspirators and the informant. During these contacts, defendant told the informant that he could deliver ten pounds of "crystal," and they discussed the sale of two pounds of "crystal" at an agreed price of $15,000 per pound. Defendant referred to the need to confer with his "bosses"

regarding the terms of the transaction. Defendant eventually told the informant that a third party, Jose Andre Flores, would deliver the drugs.

Flores delivered 804.8 grams of amphetamine to the informant who made a down payment on the drugs to Flores. Defendant and the informant had further conversations regarding the sale of cocaine, and eventually cocaine was delivered by Flores and another individual known as Tio. Defendant continued to be involved in conversations regarding the payment for the original delivery of amphetamine. According to an undercover agent involved, defendant repeatedly referred to the original delivery as "crystal," which is slang for methamphetamine. In addition, $15,000 per pound was an appropriate price for a pound of methamphetamine.

On August 10, 1998 agents with the Federal Bureau of Investigation, the Tennessee Bureau of Investigation and officers with the Cleveland, Tennessee Police Department arrested defendant when he arrived in Tennessee to collect the drug money. Defendant confessed to his involvement in the drug trafficking and told law enforcement that he worked for Francisco Cisneros in the migrant farming business and that he became involved in the drug trade only after Cisneros asked him to assist in selling some "crystal." He was not involved in the drug trade prior to his employment with Cisneros.

On October 27, 1998 an indictment was filed in the Eastern District of Tennessee charging that from October 1997 through August 1998, defendant and others conspired to commit violations of 21 U.S.C. § 841(a)(1) by unlawfully distributing cocaine and methamphetamine in violation of 21 U.S.C. § 846. On December 11, 1998 defendant pled guilty to conspiring to deliver cocaine and a controlled substance but informed the court that he denied distributing methamphetamine. It is undisputed that the drug actually distributed was amphetamine, not methamphetamine. The

determination of the type of drugs to be used in calculating the penalty was reserved for sentencing.

A presentence report was prepared by the probation officer, recommending that defendant be sentenced based on the methamphetamine he intended to deliver, rather than the amphetamine that was actually delivered. The probation officer found that defendant should receive a three-level enhancement under U.S.S.G. § 3B1.1(b) for playing a managerial role in the offense, and an adjustment downward for acceptance of responsibility. Defendant's adjusted offense level was level 32. Defendant had no criminal history, but was found ineligible due to his managerial role in the conspiracy for application of the safety valve provisions of U.S.S.G. § 5C1.2, which might have reduced his sentencing level by two. His guideline sentencing range was thus 121 to 151 months.

## II.

The one count indictment against defendant charged specifically that defendant "did combine, conspire, confederate, and agree to commit violations of Title 21, United States Code, Section 841(a)(1), that is, to unlawfully, knowingly, intentionally and without authority distribute cocaine and methamphetamine, Schedule II controlled substances; all in violation of Title 21, United States Code, Section 846." Defendant pled guilty to this indictment, but with the explicit reservation made by his attorney that "Mr. Munoz . . . stands willing to admit that he distributed cocaine and *amphetamine*. However, he cannot and will not admit that he conspired to distribute methamphetamine." (Notice of Intent to Plead Guilty, Trial R. Entry No. 11.) After attorneys for both sides stated at Rearraignment that the type of drug involved was a sentencing factor and should not affect the plea, the judge accepted defendant's guilty plea with the stated reservation.

Although the indictment charged conspiracy to distribute these two drugs in the conjunctive by stating "cocaine *and* methamphetamine," defendant only admitted his involvement

than the type of drug intended to be delivered. In other words, no matter how clear Munoz's intent was to deliver methamphetamine, the principle upon which Application Note 12 is based dictates that the amphetamine actually delivered should control his sentencing.

This conclusion is supported by the law as generally applied to sentencing for "attempt crimes." *See* 21A AM. JUR. CRIM. L. § 941 (2d ed. 1998) (referring to state statutes that provide "that one convicted of an attempt may be sentenced to a term of imprisonment not exceeding half the length of the longest term to which he could have been sentenced had he succeeded in his attempt"). Thus, despite the fact that a defendant's "moral turpitude" is just as bad whether his intended criminal act succeeds or not, the law does not generally punish him as severely if his attempt fails. I therefore disagree with the reasoning in *United State v. Lopez*, 125 F.3d 597 (8th Cir. 1997), that resulted in Lopez receiving a stiffer sentence on the basis that it "was merely fortuitous" that amphetamine rather than methamphetamine was actually delivered. *Id.* at 600. The law has long since made a major distinction between completed crimes versus attempted crimes based on what *Lopez* dismissively characterizes as "merely fortuitous."

For the above reasons, in addition to those set forth by the court, I agree that the district court erred in using methamphetamine to calculate Munoz's sentence. I therefore concur in the remand to determine a new sentence based on the actual delivery of amphetamine.

---

**CONCURRENCE**

---

RONALD LEE GILMAN, Circuit Judge, concurring. I concur in the judgment and the reasoning of the court, but write separately because I would reverse the district court's use of methamphetamine to calculate Munoz's sentence for an additional reason not expressed in Part IV.A. of the court's opinion. The court relies on Application Note 12 to hold that methamphetamine should not have been used to calculate Munoz's sentence because "the defendant was incapable of delivering methamphetamine." I would hold that methamphetamine should not have been used to calculate Munoz's sentence *even if he was capable* of delivering that drug, because it is undisputed that the drug actually delivered was amphetamine, not methamphetamine.

I base my reasoning in part on the portion of Application Note 12 that reads as follows:

> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level *unless the sale is completed and the amount delivered more accurately reflects the scale of the offense*. For example, a defendant agrees to sell 500 grams of cocaine, the transaction is completed by the delivery of the controlled substance - actually 480 grams of cocaine, and no further delivery is scheduled. In this example, the amount delivered more accurately reflects the scale of the offense.

U.S.S.G. § 2D1.1 Application Note 12 (emphasis added). Because the commentary to the guideline provides that "the amount delivered more accurately reflects the scale of the offense" than the amount intended to be delivered, parallel logic would seem to require that the type of drug actually delivered "more accurately reflects the scale of the offense"

---

in a conspiracy regarding the cocaine. The lack of a guilty plea or jury verdict as to the methamphetamine does not invalidate the entire guilty plea, however. In *Turner v. United States*, 396 U.S. 398 (1970), the Supreme Court held that "[t]he general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* at 420. Thus, defendant's guilty plea is facially valid as to the conspiracy to distribute cocaine.

### III.

Defendant received a prison sentence of 121 months, based in part on the sentencing judge's determination by a preponderance of the evidence that defendant conspired to distribute methamphetamine in addition to cocaine. The sentencing judge treated the determination of the type of drug involved as a sentencing factor to be decided by the judge.

The Supreme Court has recently limited a judge's ability to make such factual findings affecting a defendant's sentence. In *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362-63. The Sixth Circuit recently addressed the application of *Apprendi* in *United States v. Corrado*, 2000 WL 1199096 (6th Cir. Aug. 24, 2000). In that case, the jury returned a guilty verdict as to a RICO conspiracy, but did not indicate specifically whether the defendants had conspired to commit murder. The district court determined the defendant's base offense level after concluding that murder had been one of the objectives of the conspiracy. Distinguishing *Apprendi*, the Sixth Circuit upheld the sentencing, explaining that:

> The Supreme Court's recent decision in *Apprendi* . . . does not mandate a different result. . . . In this case, [defendants] faced a maximum sentence of twenty years on the RICO conspiracy counts, disregarding the murder

conspiracy. . . . Because the district court did not sentence either defendant to a term of more than twenty years on the RICO counts, *Apprendi* is not triggered and the existence of a murder conspiracy did not have to be decided by a jury under the reasonable doubt standard.

*Id.* at *13. Similarly, in the present case, defendant's sentence is invalid under *Apprendi* only if the district court's finding that defendant conspired to distribute methamphetamine resulted in defendant receiving a sentence in excess of the maximum statutory penalty for conspiracy to distribute cocaine, the crime to which defendant pled guilty.

This case involves 126.7 grams of cocaine and 804.8 grams of either amphetamine of methamphetamine. Title 21, U.S.C. § 846 provides that the penalty for conspiracy to distribute any drug will be identical to the penalties for distribution. Under 21 U.S.C. § 841(b)(1)(C), the statutory penalty for distribution of 126.7 grams of cocaine ranges from zero to twenty years imprisonment. The statutory penalty for distribution of 804.8 grams of methamphetamine, under 21 U.S.C. § 841(b)(1)(B), is five to forty years imprisonment.[1] The statutory penalty for distribution of 804.8 grams of amphetamine, a Schedule III drug, is zero to twenty years, under 21 U.S.C. § 841(b)(1)(C). Defendant pled guilty to conspiracy to deliver the specified amount of cocaine. For the cocaine alone, the statute authorizes a maximum sentence of twenty years. Defendant was actually sentenced to serve 121 months, approximately ten years. Defendant's sentence did not exceed the statutory maximum for the portion of the indictment to which he validly pled guilty. The sentencing judge's determination by a preponderance of the evidence that defendant conspired to distribute methamphetamine, rather than amphetamine, did not increase his penalty beyond the prescribed statutory maximum for conspiracy to distribute

---

[1] A 1998 amendment to 21 U.S.C. §841 would make the current § 841(b)(1)(A) applicable with a penalty of ten years to life imprisonment, but under the 1997 statute applicable in this case, 804.8 grams of methamphetamine fell within § 841(b)(1)(B).

Defendant argues that the district court erred in finding him to be a manager or supervisor because defendant was working for Cisneros, who was the "kingpin" of the conspiracy and because Cisneros directed defendant to contact the confidential informant as a result of defendant's prior acquaintance with the informant. Further, the defense contends that defendant acted only as a middleman between Cisneros and the informant and points to recorded statements made by defendant that he had to confer with his "bosses" to confirm the terms of the transaction as evidence that defendant was not managing the deal.

While the defense may have raised legitimate arguments against a finding of managerial status, the district court was not clearly erroneous in finding that defendant supervised Flores. The prosecution emphasizes that defendant worked out the deal with the informant, made arrangements for the courier to deliver the drugs, and that the courier, Flores, instructed the informant to wire a portion of the money directly to defendant. Defendant was in repeated contact with the informant and played a role in coordinating both the delivery of and payment for the amphetamine. Thus, the district court's finding that defendant managed Flores in a conspiracy involving at least five people and that he satisfies the requirements for sentencing enhancement under U.S.S.G. § 3B1.1 is not clearly erroneous. We therefore affirm the sentencing enhancement.

## V.

For the reasons stated above, we AFFIRM the sentencing enhancement based on defendant's role in the conspiracy but we REVERSE the district court's use of methamphetamine to calculate defendant's sentence. We REMAND to the district court for the determination of a new sentence consistent with this opinion.

capable of delivering methamphetamine to the undercover agent because he had none." 16 F.3d at 321. In the present case, based on all the evidence in the record, defendant simply took the drugs provided by his only source. We conclude, therefore, that defendant was not capable of delivering methamphetamine.

As described above, defendant's sentence cannot exceed the twenty year statutory maximum for conspiracy to distribute 126.7 grams of cocaine because his guilty plea is valid only as to the cocaine charge. Under the amended disjunctive language of U.S.S.G. § 2D1.1, application note 12, the district court must exclude methamphetamine from the sentencing calculation because defendant was incapable of delivering methamphetamine. Application note 12 to U.S.S.G. § 2D1.1 notes, however, that "types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." Thus, within the permissible statutory range the court is free to consider the amphetamine as relevant conduct for sentencing.

## B.

The district court's finding that defendant played a managerial or supervisory role in the conspiracy to distribute is a finding of fact and, thus, should be upheld on appeal unless clearly erroneous. *See United States v. Williams*, 962 F.2d 1218 (6th Cir. 1992).

For an aggravating role sentencing enhancement to apply, the defendant must have supervised at least one other participant in the criminal activity. *See* U.S.S.G. § 3B1.1(b), application note 2. In order for the three-level enhancement to apply, there must at least five participants in the criminal activity. *See United States v. Ward*, 68 F.3d 146 (6th Cir. 1995). An increase under U.S.S.G. § 3B1.1 is appropriate for those defendants whose "relative responsibility" for the offense is found to have been greater than that of its other participants. *See United States v. Vargas*, 16 F.3d 155, 160 (7th Cir. 1994).

126.7 grams of cocaine. Thus, the *Apprendi* ruling is not applicable here and does not impact defendant's sentence.

## IV.

In addition, however, defendant alleges that the district court erred on two grounds, independent of the issues addressed above, in calculating defendant's sentence. Defendant claims: (A) that under the Sentencing Guidelines his sentence can be influenced only by the amphetamine actually delivered and not the methamphetamine that defendant thought was being delivered, and (B) that the district court erred in finding as a factual matter that defendant played a managerial role in the conspiracy to distribute.

## A.

Defendant argues that he should be punished only for the drug he actually delivered, as opposed to the drug that he may have intended and conspired to deliver. The resolution of this issue turns on the applicability of the final sentence of U.S.S.G. § 2D1.1, application note 12 to this case. U.S. Sentencing Guideline § 2D1.1 establishes the base offense level for drug related crimes including attempt and conspiracy. Application note 12 was amended in 1995 and now reads, in relevant part:

> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. . . . If, however, the defendant establishes that he or she did not intend to provide, *or* was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

*Id.* (emphasis added).[2] Prior to the 1995 amendment, the last sentence of application note 12 instead read as follows: "However, where the court finds that the defendant did not intend to produce *and* was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing." (emphasis added).

In *United States v. Cruz-Mendoza*, 147 F.3d 1069, 1073 (9th Cir. 1998), the Ninth Circuit addressed this amendment to U.S.S.G. § 2D1.1, stating that despite cases prior to the amendment holding that "application note 12 was 'conjunctive, not disjunctive' and, therefore, . . . the defendant had to show both lack of intent and lack of capability," the amendment "substitute[d] the word 'or' for the word 'and' [and thus constituted] a substantive change." *Id.* The court concluded that under the amended application note 12, the court would be "free to conclude that the conspiracy charged . . . was not reasonably capable of providing [the agreed upon drugs]," and the base offense level would be reduced. *Id.* The Ninth Circuit's reasoning in *Cruz-Mendoza* is logical given the current language of U.S.S.G. § 2D1.1. If defendant can demonstrate that he was not reasonably capable of producing the methamphetamine, his sentence should be based on the actual drugs delivered.

The prosecution relies on *United States v. Steward*, 16 F.3d 317 (9th Cir. 1994), in which the Ninth Circuit upheld a defendant's attempt conviction for methamphetamine, even

---

[2]The concurring opinion cites a different portion of application note 12 for the proposition that the sentence should be based on amphetamine solely because amphetamine was the drug delivered. Although the concurrence reads application note 12 to state that "the amount delivered more accurately reflects the scale of the offense," that portion of the note actually says "*unless* . . . the amount delivered more accurately reflects the scale of the offense." Because the delivery of amphetamine rather than the intended methamphetamine in this case was merely fortuitous and not a result of modified intentions, we hold that the latter portion of application note 12 requires the analysis conducted here.

though the substance the defendant actually sold was less dangerous ephedrine. However, that opinion was offered in 1994 before the amendment to U.S.S.G. § 2D1.1 and the *Steward* court explicitly relied on the original conjunctive language of application note 12 that has now been modified. Under the current version of U.S.S.G. § 2D1.1, application note 12, the defendant is only required to show a lack of intent *or* a lack of capability.

At the sentencing hearing in this case, the district court stated that "[t]he Court believes that the correct Ninth Circuit law is found in *United States v. Steward*, where the Ninth Circuit said that a mistake of fact as to the controlled substance carried was not a defense to knowing possession." (Tr. Sentencing Hr'g, p.51.) But because the *Steward* court relied explicitly on the preamendment conjunctive language of application note 12, at least that portion of its ruling is no longer applicable. The district court's reliance on *Steward* was thus improper to the extent that *Steward* relied on the preamendment language of application note 12.

The prosecution points out in its brief that the Eighth Circuit, in *United States v. Lopez*, 125 F.3d 597 (8th Cir. 1997), held that the defendant should be sentenced based on methamphetamine because "[t]he fact that the substance . . . delivered was amphetamine and not methamphetamine was merely fortuitous." *Id.* at 600. Although the *Lopez* holding would support the prosecution, the foundation of the opinion is unpersuasive because the *Lopez* court relied on *Steward* without acknowledging the post-*Steward* amended language in U.S.S.G. § 2D1.1, application note 12.

The burden of proof imposed by application note 12 is on the defendant. The Sixth Circuit has held that "once the government satisfies its burden in establishing a negotiated amount, the defendants have the burden of proving they were not capable of producing that amount." *United States v. Christian*, 942 F.2d 363, 368 (6th Cir. 1991) (citing *United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990)). The Ninth Circuit in *Steward* held that the defendant "was not