**UNITED STATES of America,**

v.

**Gregorio HINDS, Defendant.**

**No. CR. 00–0173(PLF).**

United States District Court,
District of Columbia.

March 15, 2002.

James W. Rudasill, Jr., Howard Bernard Katzoff, Washington, DC, for Defendant.

*MEMORANDUM OPINION AND ORDER*

PAUL L. FRIEDMAN, District Judge.

The parties appeared before the Court for a sentencing hearing on February 15, 2002. Defendant argues that under U.S.S.G. § 2D1.1, Application Note 12, the Court should exclude from its sentencing calculations the 60.3 grams of crack cocaine he sold to an undercover police officer on November 30, 1999. The government argues that Application Note 12 does not apply in this case and that these drugs therefore should be considered for purposes of sentencing. Based on its review of the record and its reading of Application Note 12 and the relevant case law, the Court must reject defendant's argument and conclude that the 60.3 grams of crack

cocaine should be considered in calculating defendant's sentence.

## I. BACKGROUND

On May 25, 2000, a grand jury returned an indictment charging defendant Gregorio Hinds with one count of conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base, also known as crack, in violation of 21 U.S.C. § 846; one count of unlawful distribution of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of unlawful distribution of 50 grams or more of cocaine base, also known as crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii); and two counts of unlawful use of a communications facility to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b). On December 19, 2000, Mr. Hinds pleaded guilty to Count One of the indictment, conspiracy to distribute cocaine and cocaine base. At the time of his plea, he acknowledged that he was responsible for distributing 100 to 200 grams of powder cocaine and 50 to 150 grams of cocaine base, also known as crack. Specifically, defendant admitted that he sold a total of 118.9 grams of powder cocaine in two undercover buys on November 22, 1999 and December 7, 1999, consisting of 58.3 grams of cocaine and 60.6 grams of cocaine, respectively, and that he also sold 60.3 grams of crack cocaine on November 30, 1999.

Based on the type and amount of drugs involved, Mr. Hinds begins at a base offense level of 32. *See* Presentence Investigation Report ("PSI") at 5. Under U.S.S.G. § 2D1.1(b)(6), Mr. Hinds's offense level is reduced by two levels because he is eligible for a reduction under the safety valve provision of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. *See* PSI at 5, 8.[1] Because Mr. Hinds pleaded guilty, his offense level is reduced an additional three points under U.S.S.G. § 3E1.1(a) and (b)(2), resulting in an adjusted offense level of 27. *See* PSI at 5. The parties do not dispute that defendant is in Criminal History Category I, *see* PSI at 6, and that his guideline sentencing range therefore is 70 to 87 months. *See id.* at 8.

## II. DISCUSSION

Defendant contends that the 60.3 grams of crack cocaine which he and his co-defendant sold to the undercover police officer on November 30, 1999, should be excluded from his sentencing calculations because of the operation of U.S.S.G. § 2D1.1, Application Note 12. Application Note 12 provides that if a

> defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

U.S.S.G. § 2D1.1, Application Note 12. Mr. Hinds argues that he was not reasonably capable of delivering crack cocaine to the undercover officer. He contends that neither he nor his co-defendant, David Rollins, knew how to "cook" or convert powder cocaine into crack, that they asked a friend (who turned out to be a govern-

---

1. Although the government originally objected to defendant's eligibility for the safety valve, it has withdrawn its objections and now agrees that Mr. Hinds is entitled to receive the benefit of the safety valve. Because he is safety valve eligible, the Court may sentence Mr. Hinds to a term of imprisonment below the statutory minimum sentence of ten years. *See* PSI at 8.

ment informant working with the undercover officer) to cook the powder cocaine, that their friend asked someone he knew to convert powder cocaine into crack for Mr. Hinds and Mr. Rollins, and that the defendants subsequently sold this crack to the undercover officer. For purposes of this analysis, the Court accepts these factual assertions as true. If the 60.3 grams of crack cocaine are excluded from defendant's sentencing—or more properly, as defendant requests in the alternative, if it is treated as powder cocaine—his offense level drops to a 13 resulting in a sentencing range of 12 to 18 months.[2]

Under Application Note 12, the government bears the initial burden of demonstrating by a preponderance of the evidence that defendant intended to provide the buyer with the drugs in question and was reasonably capable of providing that amount. *See United States v. Dallas,* 229 F.3d 105, 109 (2d Cir.2000). Defendant then must produce some evidence tending to show that he lacked either the intent or the ability to deliver the drugs; this evidence must consist of something more than counsel's arguments. *See id.*[3] If defendant meets his burden of production, the ultimate burden of proof rests with the government to demonstrate by a preponderance of the evidence defendant's intent and ability to deliver the drugs in question. *See id.; see also United States v. Munoz,* 233 F.3d 410, 415 (6th Cir.2000).

Based on its plain language, one might conclude that Application Note 12 does not even apply to a situation where a defendant contests whether he was reasonably capable of delivering the *type* of drug for which he will be sentenced. Rather, the "reasonably capable" prong of Application Note 12 seems to cover scenarios in which a defendant agrees to deliver a specific quantity of drugs and that quantity is not delivered, and the defendant maintains that he never had or was in a position to obtain and provide that quantity of drugs. The issue at sentencing then is whether the defendant should be sentenced for the agreed upon amount or the amount actually delivered. *See* U.S.S.G. § 2D1.1, Application Note 12. Defendant argues, however, that *United States v. Munoz,* 233 F.3d at 414–16, stands for the proposition that Application Note 12 also applies when the issue at sentencing is the type of drugs involved and not just the quantity of drugs.

The defendant in *Munoz* agreed to sell two pounds of methamphetamines but in fact delivered two pounds of a different drug, amphetamines. *See United States v. Munoz,* 233 F.3d at 412. The court therefore considered evidence that the defendant was not reasonably capable of delivering the promised drugs but could deliver only the type of drugs actually supplied by his source. *See id.* at 415–16; *id.* at 416 ("based on all the evidence in the record, defendant simply took the drugs provided by his only source [amphetamines] .... [and therefore] was not capable of delivering methamphetamines" within the mean-

---

**2.** If the 60.3 grams of crack were treated as powder cocaine, the total amount of cocaine would be 179.2 grams, but if the 60.3 grams of crack were excluded from the Court's sentencing calculations, the total amount of cocaine would be 118.9 grams. In either case, the guidelines provide for an offense level of 18 for any amount of powder cocaine between 100 and 200 grams. *See* U.S.S.G. 2D1.1(c)(11). Adjusting downward three levels for acceptance of responsibility, U.S.S.G.

§ 3E1.1, and two levels because of the application of the safety valve, U.S.S.G. § 5C1.2, defendant's adjusted offense level would be 13. At an offense level 13, Criminal History Category I, the guideline sentencing range would be 12 to 18 months.

**3.** Defendant has met his burden of production by filing an affidavit under seal setting out the relevant factual details.

ing of Application Note 12.). By contrast, Mr. Hinds agreed to sell and in fact did sell and deliver 60.3 grams of crack cocaine to the undercover officer. In his written plea agreement, in the written factual proffer which he signed, and orally under oath at the plea hearing, Mr. Hinds acknowledged his guilt with respect to the crack transaction of November 30, 1999; at the sentencing hearing, he did not dispute the fact that he sold and delivered crack to the undercover officer. Thus, to the extent the Mr. Hinds argues that he lacked the ability to sell crack, his acknowledged conduct tends to belie his claim.

Furthermore, Mr. Hinds concedes that his personal inability to convert powder cocaine into crack in and of itself does not demonstrate that he was not reasonably capable of delivering crack cocaine. In response to a question posed by the Court at the February 15, 2002 hearing, defense counsel agreed that if the informant had not been an informant but was, as Mr. Hinds believed him to be at the time, a friend who knew how—or who had friends who knew how—to convert powder cocaine into crack cocaine, there would be no basis to argue for a reduction under Application Note 12. Instead, defendant argues that because the buyer was an undercover officer who asked that the drugs be delivered as crack cocaine and because the informant, who in this context is a government agent, was the person who enabled Mr. Hinds to deliver the drugs in crack form, the government was present on both ends of the drug transaction with Mr. Hinds caught in the middle. He contends that "but for" the government's "assistance" at both ends he would have not been able to deliver the drugs in crack form.

For defendant to prevail on his Application Note 12 argument, the Court would have to agree that any time an informant—a government agent—converts powder cocaine into crack for a defendant, the defendant has demonstrated that he was not reasonably capable of delivering the drugs in crack form. The Court concludes, however, that this proposition falls outside the intended scope of Application Note 12 and, while couched in the language of Application Note 12, is more properly viewed as the kind of sentencing entrapment or sentencing factor manipulation argument consistently rejected by our court of appeals. *See United States v. Glover*, 153 F.3d 749, 756–57 (D.C.Cir. 1998); *United States v. Shepherd*, 102 F.3d 558, 565–67 (D.C.Cir.1996); *United States v. Walls*, 70 F.3d 1323, 1328–30 (D.C.Cir. 1995). Defendant's argument is a classic sentencing entrapment argument: But for the government's request that he deliver the drugs in crack form and the informant's help in cooking the drugs, Mr. Hinds would not have sold crack. The facts of the case, however, show that Mr. Hinds was not induced by a government agent to do something he was not otherwise disposed, or at least willing, to do; rather, he readily agreed to the undercover officer's request that he deliver the drugs in crack form. His acknowledgment at the plea hearing of his willingness to convert the drugs shows that he was not entrapped. *See United States v. Shepard*, 102 F.3d at 566–67; *United States v. Walls*, 70 F.3d at 1328–30. The Court therefore concludes that the 60.3 grams of crack cocaine sold by Mr. Hinds to the undercover officer on November 30, 1999 must be considered for purposes of sentencing.

Still, the facts of this case are troubling because they point out yet again the unfairness of the sentencing disparity between crack cocaine and powder cocaine embodied both in the controlling statute and in the Sentencing Guidelines. Mr. Hinds had no criminal history prior to his arrest in connection with this case, has admitted his involvement in this criminal

conduct, was steadily employed for four years prior to becoming disabled in June 2000, and has the strong support of his wife and three young children who have been in court for nearly every one of the motions hearings and status conferences in this case. *See* PSI at 6–7. What is particularly harsh about the 100 to 1 crack cocaine to powder cocaine sentencing disparity is that Mr. Hinds is safety valve eligible and thus is relieved from the ten-year statutory mandatory minimum. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. Yet, because the Sentencing Guidelines have been drafted in a manner to reflect the sentencing disparity created by Congress, Mr. Hinds still faces a significantly longer sentence—70 to 87 months rather than 12 to 18 months—because the drugs delivered by him on November 30, 1999 were crack cocaine rather than powder cocaine. For the safety value eligible defendant like Mr. Hinds, the Sentencing Commission itself could reduce the disparity, either by rewriting Application Note 12 to incorporate the argument made by defendant in this case or in some other fashion. Given the current language of Application Note 12 and the case law of sentencing entrapment in this Circuit, however, the Court has no alternative but to deny defendant's request to exclude these drugs from its sentencing calculations or to treat the crack as if it were powder cocaine. Accordingly, it is hereby

ORDERED that defendant's request to exclude the drugs sold on November 30, 1999 from the Court's sentencing calculations is DENIED; and it is

FURTHER ORDERED that sentencing in this matter is scheduled for April 12, 2002 at 9:15 a.m.

SO ORDERED.