**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0604n.06
Filed: August 21, 2007

**No. 06-6039**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RICHARD NANEZ, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**Before: KENNEDY, GIBBONS, and McKEAGUE, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Richard Nanez challenges

the 240-month sentence imposed by the district court following his convictions for conspiring to

distribute a controlled substance and possessing a controlled substance with intent to distribute. On

appeal, Nanez argues that the district court, in imposing sentence following remand, (1) engaged in

improper judicial factfinding, (2) erred in calculating his guidelines range, and (3) failed to consider

his post-offense rehabilitation. After review of the record, we find no error in the district court's

decision and affirm.

I.

1

In January or February of 2002, Richard Benavides approached Nanez at a bar in Houston, Texas, and inquired about the possibility of arranging the purchase of cocaine. The two discussed the possibility of Nanez's providing Benavides with three to five kilograms of cocaine on a weekly basis. According to Benavides, Nanez agreed to sell him three to five kilograms of cocaine weekly, but Nanez informed Benavides that he could only provide a first installment of two to three kilograms. On February 15, 2002, before Benavides and Nanez reached final agreement on price, Benavides was arrested by Detective Mike Clark of the Nashville Police Department. Following his arrest, Benavides agreed to cooperate with the authorities.

On February 17, 2002, Benavides contacted Nanez, and they arranged for the delivery of three kilograms of cocaine to Benavides in Nashville for a total price of $63,000. Nanez hired Luis Avila to transport the cocaine from Houston to Nashville. At Nanez's direction, Avila drove to Odessa, Texas, where he met an unidentified supplier who provided him with two kilograms of cocaine. As directed, Avila divided the cocaine into two one-kilogram packages and placed them in the gas tank of his vehicle. Avila then recruited his girlfriend, Aravia Garcia, to assist him in the drive to Nashville. Nanez also traveled to Nashville to consummate the first transaction and recruited an associate, Kevin Neal, to drive him from Houston to Nashville in exchange for $500. Nanez and Neal arrived in Nashville on February 23, 2002, and met with an undercover law enforcement officer, Detective Jesse Burchwell, and Benavides. On the following day, Avila and Garcia arrived in Nashville with the cocaine, and Nanez informed Burchwell and Benavides that he was one kilogram short of the agreed upon three but assured them he would provide the missing kilogram. Nanez, Burchwell, Benavides, Neal, Avila, and Garcia then proceeded to an apartment

set up by the police to serve as a location for the transfer.[1] After arriving at the apartment, Nanez consummated the two kilogram transaction. Police officers moved in and arrested Nanez, Neal, Garcia, and Avila.

A grand jury issued a two-count indictment charging Nanez with conspiring to distribute five kilograms or more of a controlled substance in violation of 21 U.S.C. § 846 and possession with intent to distribute 500 grams or more of a controlled substance in violation of 21 U.S.C. § 841(a)(1). A jury convicted Nanez on both counts, and the district court sentenced him to 240 months imprisonment followed by five years of supervised release. Nanez appealed his sentence, and a panel of this court vacated his sentence in light of *United States v. Booker*, 543 U.S. 220 (2005), and remanded his case for resentencing. *United States v. Nanez* (*Nanez I*), 168 F. App'x 72, 79 (6th Cir. 2006). Following remand, the district court reimposed the same sentence imposed initially. Nanez timely appealed.

## II.

As a threshold matter, we must address both parties' arguments that the scope of this court's remand in *Nanez I* compels the result in this case. According to Nanez, because *Nanez I* vacated his sentence in light of *Booker* and remanded for resentencing, the district court exceeded the scope of the remand by engaging in improper judicial factfinding in calculating Nanez's guidelines range. In response, the government contends that because *Nanez I* remanded Nanez's case solely for resentencing in light of *Booker*, Nanez is now precluded from raising any objection to the district court's guidelines computations. Had the *Nanez I* court found merit in these objections, argues the

---

[1]While riding with Burchwell and Benavides, Nanez discussed a future transaction whereby Burchwell would come to Houston to purchase ten kilograms of cocaine the following Thursday.

3

government, the panel would have so stated and instructed the district court accordingly. As discussed below, each of the parties' arguments on this point is meritless.

Nanez's position that the Sixth Amendment precluded the district court from finding facts beyond those facts found by the jury or admitted by Nanez finds no support in the case law. *Booker* itself–in addition to numerous post-*Booker* pronouncements from this court–makes clear that judicial factfinding does not offend the Sixth Amendment so long as the guidelines occupy a purely advisory role. *Booker*, 543 U.S. at 233 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment . . . ."); *see also United States v. Gardiner*, 463 F.3d 445, 461 (6th Cir. 2006); *United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006); *United States v. Richardson*, 437 F.3d 550, 555 (6th Cir. 2006); *United States v. Coffee*, 434 F.3d 887, 898 (6th Cir. 2005); *United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005).

The government's position is similarly unsupportable. A panel's decision to grant relief on the basis of a single, dispositive issue has no bearing on other issues raised on appeal. The mere fact that this court remanded for resentencing in light of *Booker* in *Nanez I* says nothing about whether the other objections raised by Nanez in that appeal were meritorious.[2] Moreover, the position advocated by the government would, in effect, insulate the district court's guidelines computations from appellate review even though Nanez has properly noted and raised his objections both before the district court and here on appeal. Finally, *United States v. Haynes*, 468 F.3d 422, 424-25 (6th

---

[2]The panel could have addressed guidelines computation issues in the prior appeal but did not.

4

Cir. 2006), cited by the government provides no support for its argument. The *Haynes* court determined that the defendant's challenges to the district court's jury instructions and verdict form–issues related to the validity of conviction–were not properly before the court on appeal because the prior remand order was limited to resentencing in light of *Booker*. *Id.* at 425. *Haynes* offers no support for the proposition that issues related to guidelines determinations–matters that are inextricably linked to the sentencing process–are not properly before the court following a *Booker* remand. Having rejected the parties' threshold arguments regarding the scope of the *Nanez I* remand, we must address the merits of Nanez's challenge to his sentence.

III.

Nanez presents two principal challenges to his sentence. First, he alleges that the district court misapplied the guidelines in calculating the sentencing range applicable to his case. Second, Nanez argues that the district court failed to consider evidence of his post-offense conduct in deciding to impose the same sentence handed down prior to this court's *Booker* remand in *Nanez I*. We address each argument in turn.

A.

Post-*Booker*, the discretion of a district court in handing down a sentence has been enhanced, and on appeal, we review sentences for reasonableness. *United States v. Jackson,* 408 F.3d 301, 304 (6th Cir. 2005). Although the guidelines are no longer mandatory, the district court, in imposing sentence, must consider a properly calculated guidelines range as one of a number of factors outlined in 18 U.S.C. § 3553(a). *See, e.g.*, *Jackson*, 408 F.3d at 304 (citing 18 U.S.C. § 3553(a)(4)). We evaluate the district court's application of the guidelines using our pre-*Booker* standards of review.

5

*United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005); *see also United States v. Tudeme*, 457 F.3d 577, 582 (6th Cir. 2006).

1.

Nanez first argues that the district court improperly calculated the drug quantity and, as a result, his base offense level. Upon resentencing, the district court reaffirmed its original conclusion as to drug quantity and found Nanez responsible for a total of fifteen kilograms of cocaine. The original calculation comprised (1) two kilograms of cocaine actually supplied by Nanez to Benavides, (2) ten kilograms of cocaine that Nanez agreed to supply in a conversation with Burchwell and Benavides on the day of his arrest, and (3) three kilograms that was to be delivered the next week pursuant to the underlying agreement under which Nanez was to supply to Benavides three to five kilograms of cocaine weekly. Nanez contends initially that the district court was precluded from finding any quantities in excess of 5.5 kilograms–the sum of the drug quantities contained in the indictment upon which the jury returned its verdict of guilty–relying on the same judicial factfinding argument rejected above. Nanez's remaining arguments challenge the district court's specific factual findings with respect to the drug quantity determination.

"This court reviews for clear error 'the district court's determination of the quantity of drugs attributable to [a] defendant for sentencing purposes.'" *United States v. Vasquez*, 352 F.3d 1067, 1070 (6th Cir. 2003) (quoting *United States v. Ukomadu*, 236 F.3d 333, 341 (6th Cir. 2001)). A finding is clearly erroneous if, after reviewing the entire record, the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). So long as the district court's "account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even

6

though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id*. at 1071.

Nanez first argues that the district court engaged in improper double counting in computing the drug quantity attributable to him. According to Nanez, the negotiations that resulted in an agreement by Nanez to supply to Benavides three to five kilograms of cocaine on a weekly basis were merely preliminary negotiations that culminated in his delivery of two kilograms of cocaine on the day he was arrested. Thus, while he does not contest the district court's attribution of two kilograms of cocaine, he takes issue with the district court's finding that he was part of an ongoing agreement to provide three to five kilograms of cocaine on a weekly basis and its consequent attribution of an additional three kilograms of cocaine. However, the evidence in the record provides ample support for the district court's conclusion. Support for the existence of such an agreement can be found in the testimony of both Benavides and Avila, Nanez's own testimony, and statements attributed to Nanez by others. The district court took a conservative approach and attributed a single future installment of three kilograms of cocaine to Nanez. Nanez's double counting argument is unpersuasive, and on this record, it cannot be said that the district court clearly erred.

Nanez next argues that the district court erred by including in the drug quantity attributable to him the ten kilograms of cocaine he agreed to provide to Burchwell and Benavides on the day of his arrest. Nanez does not dispute that he assented to the transaction. Instead, he argues that he was merely engaging in puffery to salvage a deal that he feared might collapse because he found himself one kilogram short of the agreed upon three on the day of delivery. Furthermore, he contends that he neither intended to deliver such a large quantity of drugs nor was he reasonably capable of doing

7

so. As a result, Nanez asserts, the district court should have applied U.S.S.G. § 2D1.1 cmt. n.12, and excluded from its drug quantity calculation these ten kilograms of cocaine.

Application Note 12 of U.S.S.G. § 2D1.1 instructs the sentencing court to "exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing." Once the government has established the existence of an agreed upon quantity, the defendant bears the burden of demonstrating either (1) the absence of intent to consummate the transaction or (2) the fact that he or she was not reasonably capable of providing the agreed upon quantity. *Vasquez*, 352 F.3d at 1072 (citing *United States v. Munoz*, 233 F.3d 410, 415 (6th Cir. 2000)). The *Vasquez* court also identified a number of factors that can be relevant in evaluating the district court's findings regarding the defendant's intent and capability: (1) whether the defendant engaged in serious negotiations or "idle talk," (2) whether the defendant has participated in similar transactions, (3) whether the defendant hesitated before agreeing to the transaction, and (4) whether the drug quantity involved is comparable to quantities of drugs involved in other transactions occurring during the same time period. *Id*. at 1072-73.

With respect to intent, the only evidence in support of Nanez's claim consists of his statement at trial that he never intended to provide such a large quantity of cocaine. However, Nanez's position is somewhat undercut by his own testimony. After being asked whether he "would have never done that [ten kilogram] deal," Nanez responded, "Well, I mean if everything would have worked right, I mean I could have probably gotten back and maybe done something, but . . . my intentions at that time were not to . . . get the ten kilograms." Rather than "idle talk," Burchwell testified that he and Nanez negotiated specific details related to the ten kilogram transaction. Nanez explained to

Burchwell and Benavides where his narcotics supply connections were located, and after agreement had been reached, Nanez informed one of his co-conspirators about the planned ten kilogram purchase. Finally, there is no evidence of any hesitation on Nanez's part in agreeing to this transaction. This conduct is inconsistent with Nanez's portrayal of himself as an individual interested only in salvaging a deal and is instead consistent with the profile of an individual who saw the opportunity for a lucrative transaction and seized it.

As to his capability of providing this quantity of cocaine, Nanez argues that he was not reasonably capable of providing such a quantity of cocaine because he managed to provide only two kilograms of cocaine prior to his arrest. However, the district court properly found that Nanez had agreed to provide three to five kilograms of cocaine on a weekly basis, and witnesses testified that Nanez stated his willingness to lower the price in the event of a purchase of five kilograms of cocaine or more. Given the quantities at issue in this conspiracy, a single transaction involving ten kilograms of cocaine falls in line with reasonable expectations. Thus, we find no difficulty in agreeing with the district court's conclusion that Nanez was reasonably capable of providing such a quantity of cocaine. Given the preceding, we conclude that the district court committed no error in computing the drug quantity attributable to Nanez and therefore find no error in the district court's related computation of Nanez's base offense level under the guidelines.

2.

Nanez also argues that the district court erred in failing to apply U.S.S.G. § 3E1.1 to grant a three-level reduction in his offense level for acceptance of responsibility. Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] the determination of the sentencing judge is entitled to great deference on review." *United States v.*

9

*Farrelly*, 389 F.3d 649, 656 (6th Cir. 2004), *abrogated on other grounds by United States v. Williams*, 411 F.3d 675, 677 n.1 (6th Cir. 2005). Accordingly, this court will only disturb the district court's finding regarding acceptance of responsibility if that finding is clearly erroneous. *Id.*; *see also United States v. Angel*, 355 F.3d 462, 476 (6th Cir. 2004). "To qualify for this reduction, Defendants [are] required to show by a preponderance of the evidence that they ha[ve] accepted responsibility for the crime committed." *Farrelly*, 389 F.3d at 656 (internal quotation marks omitted) (alteration in original).

Nanez argues that because he has never contested his involvement in a conspiracy to sell cocaine and has only challenged the amount involved in the conspiracy, the district court should have given him a reduction under section 3E1.1. In particular, according to Nanez, he accepted responsibility for the delivery of two kilograms of cocaine related to the charge in count two of the indictment, and this adequately demonstrated his acceptance of responsibility. Nanez is correct that a defendant's decision to go to trial does not render him or her ineligible for an acceptance of responsibility reduction where, for example, that defendant seeks to preserve a challenge to issues unrelated to factual guilt such as the constitutionality or applicability of a statute. *See* U.S.S.G. § 3E1.1 cmt. n.2. However, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* As the *Farrelly* court observed, this court has repeatedly noted that the district court does not clearly err in denying an acceptance of responsibility reduction to a defendant who chooses to contest the essential elements of guilt and put the government to its burden of proof. 389 F.3d at 656-57 (citing cases). Nanez chose to go to trial to contest the amount of cocaine involved in the conspiracy charged in count one of the

indictment–an essential element of guilt on which the government bore the burden of proof. Accordingly, the district court did not clearly err in denying Nanez a reduction for acceptance of responsibility.[3]

3.

Nanez next challenges the district court's enhancement of his offense level pursuant to U.S.S.G. § 3B1.1(a). Because Nanez does not dispute the district court's finding that he occupied an organizational or leadership role–beyond raising his already-rejected judicial factfinding argument–that finding must stand. Thus, his challenge to the district court's application of section 3B1.1 is confined to his claim that the district court improperly calculated the number of individuals involved in the conspiracy.

Nanez takes issue with the district court's finding of a criminal activity involving *five or more* participants. This court reviews for clear error any factual findings made by the district court for purposes of this provision. *United States v. McDaniel*, 398 F.3d 540, 551 n.10 (6th Cir. 2005); *see also United States v. Henley*, 360 F.3d 509, 516 (6th Cir. 2004). The district court found that Nanez occupied a leadership role in criminal activity involving six participants: Nanez, Neal, Avila, Garcia, Benavides, and the unidentified supplier from whom Nanez directed Avila to obtain the cocaine delivered to Benavides. Nanez argues that the district court (1) improperly included

---

[3]Nanez cites *United States v. Fleener*, 900 F.2d 914 (6th Cir. 1990), in arguing that a defendant's claim of entrapment does not preclude his or her receiving a reduction for acceptance of responsibility. He claims that his challenge to the drug quantity attributed to his conduct–his principal reason for going trial–is effectively a claim of sentencing entrapment. There are a number of problems with his position. First, *Fleener* says nothing about the concept of "sentencing entrapment." Even assuming *Fleener* applies in this case, it does not *require* that a district court give a reduction under section 3E1.1 where the defendant has raised a claim of entrapment. Rather, *Fleener* merely held that the entrapment defense does not preclude application of section 3E1.1 by the district court.

Benavides because he was a government informant, (2) improperly included Garcia because her involvement in the conspiracy was not foreseeable to Nanez, and (3) improperly included the unknown supplier because Avila was actually the supplier of the cocaine.

A review of the record demonstrates that there was no error in the district court's findings. Although Nanez is correct that Benavides ultimately decided to cooperate with the government following his arrest, he became involved in the criminal activity that gave rise to the instant charges prior to his arrest and decision to cooperate. Accordingly, unlike an undercover law enforcement officer, Benavides was "criminally responsible," and it was not error for the district court to include Benavides as a participant. *See* U.S.S.G. § 3B1.1 cmt. n.1; s*ee also United States v. Dyer*, 910 F.2d 530, 533 (8th Cir. 1990) (rejecting the argument that a government informant could not be included under section 3B1.1 after noting that the informant's involvement with the defendant's criminal activity preceded the decision to cooperate with the government). As to the unknown supplier, Nanez also claimed at trial that there was no supplier other than Avila. At his first sentencing hearing, the district court rejected Nanez's contention and instead credited the testimony of Avila as to the existence of an unidentified supplier from whom Avila procured the cocaine. The district court's credibility determinations are accorded great deference by this court, *see United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007), and Nanez points to nothing in the record–beyond his own contrary testimony–that would call the district court's finding into question. With respect to Garcia, the guidelines make no mention of a foreseeability requirement in order to include an individual under section 3B1.1. There is no need to address Nanez's argument on this point, however, because the district court properly found the existence of criminal activity involving at least

five participants, whether or not Garcia was properly included. Therefore, the district court committed no error in its application of section 3B1.1.

4.

In his final challenge to the district court's application of the guidelines, Nanez argues that the district court erred in denying him an offense-level reduction pursuant to U.S.S.G. § 5C1.2.[4] The government argues that Nanez has waived this issue by failing to raise it in his first appeal to this court. Whether or not Nanez has waived this issue, his failure to raise a successful challenge to the district court's finding that he occupied a leadership role in the offense charged precludes application of section 5C1.2 and provides an independent reason for rejecting his claim of error. *See* U.S.S.G. § 5C1.2(a)(4). Thus, the district court did not err in declining to apply the safety valve.

B.

Nanez's second overarching challenge to his sentence consists of his claim that the district court failed to consider his post-offense efforts at rehabilitation when it decided to reimpose the same sentence it handed down pre-*Booker*. Nanez's argument raises a challenge to the procedural reasonableness of his sentence because it involves a claim that the district court failed to consider relevant evidence pertaining to the sentencing factors outlined in 18 U.S.C. § 3553(a). *See, e.g.*, *United States v. Dexta*, 470 F.3d 612, 614-15 (6th Cir. 2006). The government, relying on *United States v. Worley*, 453 F.3d 706, 709 (6th Cir. 2006), argues that post-offense conduct is not relevant on remand for resentencing in light of *Booker*. While *Worely* does appear to support the government's position, Nanez's argument on appeal fails for another reason. It is clear from a

---

[4]In his brief, Nanez claims the district court erred in denying him an offense level reduction and references U.S.S.G. § 2D1.1(b)(7). It is clear from the record and the parties' briefs, however, that Nanez's claim revolves around the safety valve provision contained in section 5C1.2.

review of the sentencing transcript that the district court was aware of Nanez's post-offense conduct, explicitly considered this conduct in declining to exercise its discretion to go below the guidelines, and instead imposed the same sentence imposed pre-*Booker*. Thus, even assuming that *Worley* does not preclude a district court's consideration of this sort of evidence, Nanez's claim that the district court in this case failed to do so is not supported by the record.

Nanez has failed to demonstrate any procedural defect in the sentence imposed by the district court. To the extent that one might construe his argument to encompass a challenge to the substantive length of the sentence selected by the district court, Nanez offers nothing more than a conclusory assertion that the district court erred by giving no weight to his mitigating evidence. The record reflects that the district court considered all of the relevant statutory factors and balanced all of the mitigating and aggravating evidence in calculating an appropriate sentence. Under such circumstances, it is not the province of the appellate court to substitute its judgment for that of the sentencing court. *United States v. Collington*, 461 F.3d 805, 811 (6th Cir. 2006). Accordingly, we find the sentence imposed reasonable.

IV.

For the foregoing reasons, we affirm.

14